In re Vera M. HILL, Debtor.

Leonard M. GROUPE, Trustee, Plaintiff,

v.

Vera M. HILL, Buy Right Investments,
Doris M. Gunn and Wesav Mortgage
Corp., Defendants.

Bankruptcy No. 90 B 09996.
Adv. No. 93 A 00072.

United States Bankruptcy Court,
N.D. Illinois, E.D.

July 29, 1993.

Leonard M. Groupe, Bruce M. Katz, Groupe & Katz, Chicago, IL, Trustee of Chapter 7 Estate.

Carol Coplan, O'Brien, O'Rourke, Hogan & McNulty, Chicago, IL, for defendants Doris M. Gunn and Wesav Mortgage Corp.

Mitchell E. Jones, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for defendant Buy Right Investments, Inc.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the motion of Doris Gunn ("Gunn") and Wesav Mortgage Corp. ("Wesav") for summary judgment pursuant to Federal Rule of Civil Procedure 56, incorporated by ref-

erence in Federal Rule of Bankruptcy Procedure 7056 and on the cross-motion of Leonard M. Groupe, the trustee (the "Trustee") for summary judgment. For the reasons set forth herein, the Court having considered the pleadings, exhibits and affidavits, hereby grants the motion of Gunn and Wesav and denies the motion of the Trustee for summary judgment.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E) and (O).

## II. FACTS AND BACKGROUND

Many of the facts are undisputed. The Debtor filed a Chapter 13 petition and plan of reorganization on May 1, 1990. The plan was subsequently confirmed on July 24, 1990. Sometime thereafter, on April 1, 1992, the Debtor voluntarily converted the case to Chapter 7 pursuant to 11 U.S.C. § 1307(a). Subsequently, Leonard M. Groupe was appointed the Chapter 7 trustee (the "Trustee") on April 21, 1992.

At the time of the filing of the Chapter 13 petition, the Debtor owned property located at 12439 South Wentworth, Chicago, Illinois (the "Property"). On June 22, 1992, the Debtor conveyed the Property to Buy Right Investments, Inc. ("Buy Right") by giving Buy Right a quitclaim deed. Thereafter, the quitclaim deed was recorded with the Cook County Recorder of Deeds. Buy Right in turn conveyed the Property to Gunn by giving her a warranty deed for her payment of $49,500.00 on November 3, 1992. The warranty deed was recorded with the Cook County Recorder of Deeds on November 6, 1992. Wesav is the mortgage company who provided a loan secured by the mortgage from Gunn on the Property. Wesav's mortgage was recorded with the Cook County Recorder of Deeds on November 6, 1992.

The Trustee filed the instant adversary proceeding on January 14, 1993, and filed an amended complaint on April 13, 1993. The amended complaint alleges that Buy Right's warranty deed to Gunn was an action taken in violation of 11 U.S.C. § 362(a)(3), and hence is null and void ab initio. The Trustee further alleges that Gunn's granting of the mortgage on the Property to Wesav is a nullity, conveyed no interest to Wesav, and constitutes a cloud on the Trustee's title to the Property. The Trustee seeks turnover of the Property pursuant to 11 U.S.C. § 542 from Gunn, and the entry of an order declaring that the Debtor's quitclaim deed to Buy Right, Buy Right's warranty deed to Gunn, and the mortgage given by Gunn to Wesav are void ab initio.

Buy Right, in its amended answer to the amended complaint, sets forth several affirmative defenses. First, Buy Right alleges that it had no knowledge of the Debtor's pending bankruptcy on June 22, 1992. Second, Buy Right contends that it paid to the Debtor the fair market sum of approximately $31,000.00 for her conveyance of the Property to Buy Right via the quitclaim deed. Buy Right further maintains that it improved the Property by expending the sum of $18,000.00, and subsequently sold the Property to Gunn for approximately $49,000.00. Third, Buy Right alleges that it was a good faith purchaser. Last, Buy Right states that the Trustee did not file a copy of the bankruptcy petition with the Recorder of Deeds for Cook County until November 6, 1992, almost six months after the conveyance to Buy Right.

Rather than filing an answer to the amended complaint, Gunn and Wesav filed their motion for summary judgment on April 5, 1993. Thereafter, the Trustee filed a cross-motion for summary judgment on May 3, 1993. In addition, Gunn filed a cross-claim against Buy Right. Gunn contends that in the event that the Court finds in favor of the Trustee, Buy Right will have breached its warranties of good title to her under the warranty deed. Gunn maintains that as a result of this purported breach of warranty, she has expended funds and incurred attorney's fees to pro-

tect her title to the Property in this adversary proceeding.

## III. ARGUMENTS OF THE PARTIES

Gunn and Wesav contend in their motion for summary judgment that as bona fide purchaser and mortgagee for value and without any notice of the avoidability of the deed from Hill to Buy Right, they are protected from the Trustee's avoidance and recovery powers under Sections 549 and 550 of the Bankruptcy Code. Moreover, Gunn and Wesav argue that even if the Court were to find the deed from Hill to Buy Right void, because the Trustee failed to record a copy of the bankruptcy petition before Gunn and Wesav purchased their interests in the Property, Gunn and Wesav took the Property for value and without knowledge of the bankruptcy case, and thus are protected.

The Trustee, on the other hand, argues that sections 549 and 550 do not apply because the deed from Hill to Buy Right was made in violation of the automatic stay under 11 U.S.C. § 362(a)(3), rendering it void, and precluding a transfer of the Property. Alternatively, the Trustee contends that if section 549 does apply, Gunn and Wesav had sufficient facts to put them on notice of the avoidability of the deed from Hill to Buy Right. The Trustee contends that Hill's quitclaim deed instead of a warranty deed to Buy Right should have put Gunn and Wesav on notice that there might have been something amiss with Hill's title to the Property, and further inquiry should have been made. Hence, the Trustee concludes that Gunn and Wesav are not transferees without knowledge of the possible avoidability of the transfer.

The primary gist of the Trustee's cross-motion for summary judgment is that the Debtor, as of the date of the conversion of the case to Chapter 7, had no legal capacity to convey any interest in the Property. The Trustee contends that the quitclaim deed from Hill to Buy Right conveyed only whatever interest the Debtor had in the premises at that time, which the Trustee maintains was none. The Trustee argues that the Debtor's quitclaim deed to Buy Right cannot properly be termed a post-petition transfer of property of the estate as that term is used in section 549.

## IV. APPLICABLE STANDARDS

### A. Summary Judgment Standard

In order to prevail on a motion for summary judgment, the movant must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) reads in part:

[T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); see also Donald v. Polk County, 836 F.2d 376, 378–379 (7th Cir. 1988).

In 1986, the United States Supreme Court decided a trilogy of cases which encourage the use of summary judgment as a means to dispose of factually unsupported claims. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute." Farries v. Stanadyne/Chicago Div., 832 F.2d 374, 378 (7th Cir.1987) quoting Wainwright Bank & Trust Co. v. Railroadmens Federal Sav. & Loan Asso., 806 F.2d 146, 149 (7th Cir.1986). The burden is on the moving party to show that no genuine issue of material fact is in dispute. Anderson, 477 U.S. at 256, 106 S.Ct. at 2514; Celotex, 477 U.S. at 322, 106 S.Ct. at 2552; Matsushita, 475 U.S. at 585–586, 106 S.Ct. at 1355–1356. There is no genuine issue for trial if the record, taken as a whole, does not lead a rational trier of fact

to find for the non-moving party. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250, 106 S.Ct. at 2511 (citations omitted); *see also Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 659 (7th Cir.1987), *cert. denied*, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987).

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, identifying those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. Once the motion is supported by a prima facie showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings, rather its response must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552; *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356; *Patrick v. Jasper County*, 901 F.2d 561, 564–566 (7th Cir.1990). The manner in which this showing can be made depends upon which party will bear the burden of persuasion at trial. If the burden of persuasion at trial would be on the non-moving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either submitting affirmative evidence that negates an essential element of the non-moving party's claim, or by demonstrating that the non-moving party's claim is insufficient to establish an essential element of the non-moving party's claim. *See* 10A Charles Wright, Arthur Miller, Mary Kay Kane, *Federal Practice and Procedure* § 2727, pp. 130–131 (1983).

Moreover, all reasonable inferences to be drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Karazanos v. Navistar International Transportation Corp.*, 948 F.2d 332, 335 (7th Cir.1991);

*Davis v. Chicago*, 841 F.2d 186, 189 (7th Cir.1988); *Marine Bank, Nat. Asso. v. Meat Counter, Inc.*, 826 F.2d 1577, 1579 (7th Cir.1987); *De Valk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987); *Bartman v. Allis Chalmers Corp.*, 799 F.2d 311, 312 (7th Cir.1986), *cert. denied*, 479 U.S. 1092, 107 S.Ct. 1304, 94 L.Ed.2d 160 (1987); *In re Calisoff*, 92 B.R. 346, 350–351 (Bankr.N.D.Ill.1988). Furthermore, the existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under the applicable law. *Donald v. Polk County*, 836 F.2d at 379; *Wallace v. Greer*, 821 F.2d 1274, 1276 (7th Cir.1987); *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.1983) (en banc), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). "Summary judgment is not an appropriate occasion for weighing the evidence; rather the inquiry is limited to determining if there is a genuine issue for trial." *Lohorn v. Michal*, 913 F.2d 327, 331 (7th Cir.1990). The parties have filed cross-motions for summary judgment. Each motion must be ruled on independently and all motions must be denied if there are genuine issues of material fact. *ITT Industrial Credit Co. v. D.S. America, Inc.*, 674 F.Supp. 1330, 1331 (N.D.Ill.1987). Cross-motions for summary judgment do not require the Court to decide the matter on those motions; the Court can deny both motions if the parties have failed to meet the burden of establishing no genuine issue of material fact exists and that they are entitled to judgment as a matter of law. *Id.*

Rule 12(M) of the General Rules of the United States District Court for the Northern District of Illinois, adopted by the General Order of the Bankruptcy Court on May 6, 1986, requires that the party moving for summary judgment file a detailed statement of material facts as to which it contends there is no genuine issue. The statement must include specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the summary judgment relief sought. Rule 12(N) also requires that the party opposing the motion file a statement of

material facts as to which there is a genuine issue. If the opposing party's Rule 12(N) statement fails to deny the facts set forth in the movant's statement, those facts will be deemed admitted. In the present proceeding, the movants have filed their requisite Rule 12 statements.

### B. *Effect of Conversion from Chapter 13 to Chapter 7*

■ Section 541 of the Bankruptcy Code provides that an estate is created upon the commencement of a case. 11 U.S.C. § 541. Section 541 further identifies what becomes property of the estate and what is excluded from it. Section 1306 of the Code expands the Chapter 13 estate beyond the limits described in section 541. Property of the type specified in section 541 that a debtor acquires after the commencement of the case but before conversion, dismissal or closing of the case, is also property of the estate. *See* 11 U.S.C. § 1306. At the time of confirmation, and absent a provision in the plan or order of confirmation to the contrary, all property of the Chapter 13 estate vests in the debtor. *See* 11 U.S.C. § 1327(b).[1]

■ The Bankruptcy Code contains no provisions that provide for the recreation of any new estate upon the post-confirmation conversion of a confirmed Chapter 13 case to a Chapter 7 case. One view espoused by a number of courts has defined property of the Chapter 7 estate after conversion from Chapter 13 to include property or income acquired by the Chapter 13 debtor before conversion, using section 1306. *See Resendez v. Lindquist*, 691 F.2d 397 (8th Cir.1982); *In re Lindberg*, 735 F.2d 1087 (8th Cir.1984), *cert. denied, Armstrong v. Lindberg*, 469 U.S. 1073, 105 S.Ct. 566, 83 L.Ed.2d 507 (1984) (funds held by the Chapter 13 trustee awaiting distribution to creditors became property of the Chapter 7 estate); *see also In re Lybrook*,

951 F.2d 136 (7th Cir.1991) (an inheritance received by a Chapter 13 debtor more than 180 days after filing and before conversion to Chapter 7 became property of the Chapter 7 estate). It is logical to include property previously "revested" in the Debtor under a confirmed Chapter 13 plan as part of the bankruptcy estate upon the Debtor's subsequent voluntary conversion to Chapter 7. Otherwise, a debtor could reap a potential windfall to the creditors' detriment upon conversion to Chapter 7. This is contrary to the bankruptcy policy of paying claims of creditors pro rata from the non-exempt assets of the debtor which pass into the bankruptcy estate.

Section 348 of the Bankruptcy Code speaks to the effect of conversion, but does not directly address the composition of the bankruptcy estate in the same case after conversion from relief under one chapter to another.[2] It only specifies that the date of the petition, commencement of the case and order for relief are unchanged. Thus, the superseding Chapter 7 is deemed to have commenced as of the date of the original Chapter 13 petition.

The Seventh Circuit has held that a Chapter 13 estate passes unaltered into Chapter 7 upon conversion. *In re Lybrook*, 951 F.2d 136, 138 (7th Cir.1991). Accordingly, the Court subscribes to the view that the Chapter 7 estate includes all remaining property in which the Chapter 13 debtor had an interest on the date of the conversion to Chapter 7. This result is in accord with the provisions of sections 1306 and 1327(b), logic, and the orderly administration of bankruptcy estates. Otherwise, the duties of the trustee, as set forth in 11 U.S.C. § 704(1), would be rendered meaningless and some sort of legal limbo would exist with regard to property having revested in a debtor under section 1327(b),

---

1. Paragraph seven of the Debtor's confirmed plan provided for such revesting in the Debtor upon confirmation.

2. Section 348(a) of the Bankruptcy Code provides:

Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for

relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.

11 U.S.C. § 348(a).

upon conversion, not being considered part of property of the estate for the Chapter 7 trustee to administer. The Bankruptcy Code does not provide that a new or different estate is created at the time of the conversion. The Code does not contain any express exception or other provision excluding revested property from the estate in a case subsequently converted from Chapter 13 to another chapter. Thus, the Court concludes that upon conversion, the subject Property was included among the estate assets.

### C. *11 U.S.C. § 362*

 Section 362(a)(3) of the Bankruptcy Code operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The purpose of section 362 is two-fold. First, it protects the debtor from collection efforts by creditors while the debtor attempts to reorganize, to repay debts or to obtain a discharge of those debts. *Knopfler v. Glidden Co.*, 149 B.R. 517, 521 (Bankr.N.D.Ill. 1992). In addition, the automatic stay protects creditors by preventing the dismemberment of the estate by other creditors seeking to gain an unfair advantage over their peers. *Martin–Trigona v. Champion Federal Sav. & Loan Asso.*, 892 F.2d 575, 577 (7th Cir.1989). Moreover, the automatic stay maintains the status quo to ensure an orderly distribution of estate assets as well as facilitate the administration of the estate by allowing the courts to resolve claims and distribute assets in accord with priorities recognized by the Bankruptcy Code. *In re Vitreous Steel Products Co.*, 911 F.2d 1223, 1231–1232 (7th Cir.1990).

A majority of courts have held that actions taken in violation of the automatic stay are considered void and not merely voidable. *In re Schwartz*, 954 F.2d 569, 574 (9th Cir.1992); *Maritime Electric Co. v. United Jersey Bank*, 959 F.2d 1194, 1206 (3d Cir.1991); *In re Calder*, 907 F.2d 953, 956 (10th Cir.1990); *In re Smith*, 876 F.2d 524, 525–526 (6th Cir.1989); *In re 48th Street Steakhouse*, 835 F.2d 427, 431 (2d

Cir.1987), *cert. denied*, 485 U.S. 1035, 108 S.Ct. 1596, 99 L.Ed.2d 910 (1988); *Borg–Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir.1982); *In re Garcia*, 109 B.R. 335, 338 (N.D.Ill.1989); *Richard v. Chicago*, 80 B.R. 451, 453 (N.D.Ill. 1987); *In re Pettibone Corp.*, 110 B.R. 848, 853 (Bankr.N.D.Ill.1990), *aff'd sub nom. Pettibone Corp v. Baker*, 119 B.R. 603 (N.D.Ill.1990), *vacated on other grounds sub nom. Pettibone Corp v. Easley*, 935 F.2d 120 (7th Cir.1991); *Knopfler v. Glidden Co.*, 149 B.R. 517, 522 (Bankr.N.D.Ill. 1992); *In re BNT Terminals, Inc.*, 125 B.R. 963, 980 (Bankr.N.D.Ill.1990); *In re Young*, 14 B.R. 809, 811 (Bankr.N.D.Ill. 1981).

Other courts that have found actions in violation of the automatic stay voidable rather than void, have relied primarily on sections 362(d) and 549 to support their conclusion. *See e.g., Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178–179 (5th Cir. 1989); *In re Oliver*, 38 B.R. 245, 248 (Bankr.D.Minn.1984). The rationale behind this conclusion is that a court's power under section 362(d) to annul the automatic stay and a trustee's duty under section 549 to bring an action to void an unauthorized transfer are inconsistent with violations of the stay being void, and thus illustrate that violations of the stay are merely voidable. *See Schwartz*, 954 F.2d at 572.

This does not end the inquiry, however, because the Court has previously held that such violations whether void or voidable must be willful to be actionable and sanctionable under section 362(h), which is the only remedy expressly contained in section 362 for violations of section 362(a)(1)–(8). *See In re Prairie Trunk Railway*, 125 B.R. 217 (Bankr.N.D.Ill.1991). A violation of the stay may have occurred when the Debtor transferred the Property by conveying a quitclaim deed to Buy Right, but not by Gunn's unknowing subsequent acceptance as a bona fide purchaser for fair value of the warranty deed from Buy Right, or her mortgaging of the Property to Wesav, who likewise had no notice of the bankruptcy. More significantly, section 362 does not contain any express grant of

authority for a trustee to pursue an avoidance action or to recover or seek turnover of property of the estate conveyed in violation of its provisions. Resort to other provisions of the Code is required and their terms must be considered.

### D. *11 U.S.C. § 542*

■ The Trustee seeks turnover of the Property from Gunn under section 542.[3] The thrust of section 542 is that an entity having the power to regulate or direct the transfer of assets that are property of a debtor's estate must utilize that power of direction to turn the assets over to the trustee for the estate or otherwise account for them. *In re Robertson*, 115 B.R. 613, 622 (Bankr.N.D.Ill.1990). Section 542(a) imposes a duty upon an entity, other than a custodian, to deliver to the trustee, property that the debtor may use, sell or lease under section 363. The property must be property of the estate. *In re Wildlife Center, Inc.*, 102 B.R. 321, 324 (Bankr. E.D.N.Y.1989). In seeking turnover, the burden is upon the party seeking the turnover. *In re High Sierra Transport, Inc.*, 101 B.R. 432, 434 (Bankr.M.D.Pa.1989). That burden must be carried by clear and convincing evidence. *Robertson*, 115 B.R. at 620; *In re Bloom*, 91 B.R. 445 (Bankr. N.D.Ohio 1988).

The Trustee contends that the Court should only look to sections 362(a)(3) and 542 and the case law interpreting same because these sections are his theories of offense. He claims that the defenses under sections 549(c) and 550(b) raised by Gunn and Wesav are not applicable because there was never a post-petition transfer. The Court rejects this position because after the petition was filed, the Debt-

or conveyed the Property via quitclaim deed to Buy Right. The Bankruptcy Code's definition of "transfer" is not restricted as to the time or the identity of the party making the transfer. *See* 11 U.S.C. 101(58)[54]. The ultimate issue is whether the transfers to Gunn and Wesav are void under section 362(a)(3) and properly recoverable under section 542, or excepted under the bona fide purchaser defenses in sections 549(c) and 550(b).

■ Although sections 362(a)(3) and 542 do not expressly reference sections 549(c) and 550(b), the Court must consider such defenses because same were affirmatively raised by Gunn and Wesav. Moreover, the Bankruptcy Code must be considered as a whole and the impact and application of one section cannot be viewed in isolation without proper thought to other relevant and perhaps controlling sections. *See generally Dewsnup v. Timm*, —— U.S. ——, ——, 112 S.Ct. 773, 780, 116 L.Ed.2d 903 (1992) (Scalia, J., dissenting).

### E. *11 U.S.C. § 549*

Section 549(a) of the Bankruptcy Code empowers a trustee to avoid certain authorized transfers and all unauthorized post-petition transfers of property of the estate.[4] A narrow exception to this power is contained in subsection (c) which provides:

(c) The trustee may not avoid under subsection (a) of this section a transfer of real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of such real property may be recorded to perfect such transfer, before such trans-

---

3. Section 542 of the Bankruptcy Code provides in relevant part:

 (a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.
 11 U.S.C. § 542(a).

4. Section 549 reads in pertinent part:

 (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—
 (1) that occurs after the commencement of the case; and
 (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
 (B) that is not authorized under this title or by the court.
 11 U.S.C. § 549(a).

fer is so perfected that a bona fide purchaser of such property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to the interest of such good faith purchaser. A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected.

11 U.S.C. § 549(c).

■■■■ Pursuant to section 549(c), a trustee may not avoid transfers of realty to good faith purchasers for present fair equivalent value and without knowledge of the commencement of the bankruptcy case, if a copy or notice of the petition has not been filed in an appropriate recording office where the property is located. Good faith purchasers of the estate's real property, without knowledge of the case, who have given less than present fair equivalent value before a copy of the petition has been filed, will not be protected other than to the extent of a lien for any present value given.

Thus, the question turns to the issue of whether the defenses raised under sections 549(c) and 550(b) can defeat the Trustee's recovery action brought under section 542. In addition, do such defenses under those sections raise a conflict with section 362(a)(3)? The *Garcia* court discussed the perceived conflict between sections 362 and 549 and opined:

[T]here is an interpretation, which settles the question of § 362(a)'s interrelation with § 549 in a manner consistent with the policies promoted by the Bankruptcy Code and which is applicable to all types of transactions. It is based upon both the distinctions between actions *specifically prohibited* by the automatic stay and actions not *otherwise authorized* by the Bankruptcy Code and the debtor's role in the transaction in question.... Targeted at the activities of creditors, the automatic stay itself does not specifically prohibit the debtor from willingly

transferring an interest in property of the estate post-petition.... Moreover, that Congress saw fit to include specific exceptions to the automatic stay does not require the conclusion that actions in violation of the automatic stay are merely voidable. Rather, they are examples of the recognition that in certain circumstances significant interests promoted by nonbankruptcy law conflict with the purposes of the Bankruptcy Code and occasionally must be given precedence. *See* § 549(c).

*Garcia*, 109 B.R. at 339–340; *see also In re R. & L. Cartage & Sons, Inc.*, 118 B.R. 646, 650–651 (Bankr.N.D.Ind.1990) (adopting *Garcia* analysis).

■■■ The *Schwartz* court further addressed the interplay between sections 362 and 549 and noted:

Section 362's automatic stay does not apply to sales or transfers of property initiated by the debtor. Thus, section 549 has purpose in bankruptcy beyond the potential overlap with section 362. In other words, the automatic stay can void any violation and still leave section 549 with a valid and important role in bankruptcy. Section 549 exists as a protection for creditors against unauthorized debtor transfers of estate property. Although there are circumstances where section 362 overlaps section 549 and renders it unnecessary, this overlap falls far short of rendering section 549 meaningless.

954 F.2d at 574. Pursuant to principles of statutory construction, where possible statutes must be read so as to give meaning to each statute, *In re Ziegler*, 136 B.R. 497, 502 (Bankr.N.D.Ill.1992), and should be construed in harmony, rather than conflicting with each other. *In re Johnson*, 787 F.2d 1179, 1181 (7th Cir.1986); *In re Brown*, 79 B.R. 789, 791 (Bankr.N.D.Ill. 1987).

■■■ Section 549(c) is an exception to section 362 regardless of whether violations of the automatic stay are void or voidable. *Schwartz*, 954 F.2d at 574. Contrary to the Trustee's arguments, section

549(c) is intended to protect good faith purchasers where the sale would otherwise be subject to avoidance under section 549 or void under section 362. Avoidance powers under section 549 (or sections 544, 545, 547 or 548) can result in a transfer being set aside, but that power does not get the property back in the possession of the trustee or other party invoking same. Resort to the turnover or recovery provisions pursuant to sections 542, 543 or 550 is needed.

### F. *11 U.S.C. § 550*

■ 11 U.S.C. § 550(b)(1) exempts innocent subsequent purchasers from a trustee's avoidance powers, and is another statutory exception to the general rule that actions taken in violation of the automatic stay are considered void. Section 550(b)(1) provides:

> (b) The trustee may not recover under section (a)(2) of this section from—
>
> > (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
> >
> > (2) any immediate or mediate good faith transferee of such transferee.

11 U.S.C. § 550(b)(1).

■ Under the section 550(b) exception to a trustee's recovery power, the transferee includes subsequent transferees of the initial transferee from the debtor who take the property for value, in good faith and without knowledge of the avoidability of the initial transfer. *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890 (7th Cir.1988). While section 550 does not establish a burden of proof, one court has held that the burden of proof is on the transferee to show that it took for value, in good faith and without knowledge of the voidability of the transfer. *In re Nordic Village, Inc.*, 915 F.2d 1049, 1055 (6th Cir.1990), *rev'd on other grounds*, —— U.S. ——, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). To be protected under section 550(b)(1), a subsequent transferee must take the property without knowledge of the voidability of the transfer

avoided. *Bonded Financial Services*, 838 F.2d at 898. Knowledge of voidability does not require "complete understanding of the facts and receipt of a lawyer's opinion that such a transfer is voidable; some lesser knowledge will do." *Id.* A transferee who lacks the necessary information to support an inference of knowledge need not start his own investigation. *Id.*

### V. DISCUSSION

■ On the evidence submitted, the Court hereby grants the motion for summary judgment filed by Gunn and Wesav as there is no genuine issue of material fact and as a matter of law they are entitled to judgment. Gunn, a bona fide purchaser, who was financed by Wesav, took their interests in the Property for fair value and without any knowledge of the bankruptcy. The uncontroverted affidavits of Gunn and Kenneth Jeffus, the operations manager at Wesav, demonstrate that neither Gunn nor Wesav had any knowledge of the Debtor's bankruptcy case (or the unauthorized conveyance from the Debtor to Buy Right) when Gunn purchased the Property from Buy Right and when Wesav received the mortgage from Gunn on the Property. The Trustee has not produced any evidence showing either Gunn or Wesav had any actual or constructive notice of the pendency of this case, the prior unauthorized transfer from the Debtor, or that they did not actually give full fair value for their interests in the Property. Furthermore, the Trustee failed to timely record the bankruptcy petition with the Cook County Recorder of Deeds placing Gunn and Wesav on constructive notice of the case before they received their interests in the Property. Accordingly, Gunn and Wesav are protected from the Trustee's avoidance powers under section 549(c) and his recovery power by section 550(b).

The Court rejects the Trustee's response that sections 549 and 550 do not apply because the deed from Hill to Buy Right was made in violation of the automatic stay, rendering it void ab initio. There is no compelling policy reason not to apply the bona fide purchaser defense on these

facts. The defense cannot be dodged by the ploy of only invoking section 542, and thus contending the defenses of sections 549 and 550 are therefore inapplicable. There is no statutory provision restricting use of those defenses only to actions brought under sections 549 or 550. No provision in the Code precludes use of the bona fide purchaser defense against turn-over actions under section 542. The ultimate relief sought by the Trustee is to get the Property back unencumbered by Wesav's mortgage, without the cloud on title of the warranty deed to Gunn and Gunn's possession. Whether the statutory nominal relief is styled turnover under section 542, avoidance under section 549 or recovery under section 550, the end result sought is substantially the same.

The Court concludes that the transfer of the Property to Gunn and the mortgage to Wesav were not actions that are indefensibly void pursuant to section 362. Sections 549 and 550 provide recognized narrow statutory exceptions, for the benefit of subsequent bona fide purchasers and encumbrancers without notice, to the majority rule that actions taken in violation of the automatic stay are void. The salient point the Trustee misses is that the automatic stay of section 362(a) and its text do not specifically prohibit the Debtor from voluntarily transferring an interest in property of the estate post-petition. Moreover, as noted in a learned treatise, "[t]he operative event cutting off the Debtor's power to dispose of its realty to a bona fide purchaser is not the order for relief. It is the recording of the petition or a notice of the petition with the local office for recording transactions in real property." R. Ginsberg and R. Martin, *Bankruptcy: Text Statutes Rules*, § 906[c][2] at 9–74 (3d ed. 1992).

It is uncontroverted and of critical importance that the Trustee failed to timely comply with the requirements of section 549(c) which establishes both a safe harbor for trustees who record and provide constructive notice to potential purchasers and encumbrancers. Recording the bankruptcy petition puts all interested parties on notice of the pendency of the case leading to further inquiries about a debtor's interest in real property sought to be transferred. The Court normally looks to state law to determine interests in property and their perfection absent a conflict with federal bankruptcy law. *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–918, 59 L.Ed.2d 136 (1979); *In re Atchison*, 925 F.2d 209, 210 (7th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 178, 116 L.Ed.2d 140 (1991).

Alternatively, the Trustee contends that if section 549 applies, Gunn and Wesav had sufficient facts to put them on notice of the avoidability of the deed because of the kind of deed used to convey the Property from Hill to Buy Right. The Court also rejects this argument as unsupported by the facts and not well founded in law. The primary means of charging any party with notice of an interest in Illinois real property is to record that interest. *See* 765 ILCS 5/30; *Smith v. Grubb*, 402 Ill. 451, 84 N.E.2d 421 (1949). A purchaser of real property in Illinois is only required to check the chain of title as shown in the grantor-grantee index search at the recorder of deeds office of the county in which the property is located in order to uncover any adverse interest on the property. *Greer v. Carter Oil Co.*, 373 Ill. 168, 25 N.E.2d 805 (1940); *Landis v. Miles Homes, Inc.*, 1 Ill.App.3d 331, 335, 273 N.E.2d 153, 155 (2d Dist.1971) (parties are "charged with knowledge of what appears in the grantor-grantee index, the legal record required to be maintained by the Recorder"). Recording outside of the grantor-grantee index, as in a tract index, is recording merely for convenience. *Landis*, 1 Ill. App.3d at 335, 273 N.E.2d at 155. If the interest is not recorded in the chain of title, it is not constructive notice to third parties. *Skidmore, Owings & Merrill v. Pathway Financial*, 173 Ill.App.3d 512, 514, 123 Ill. Dec. 395, 396–397, 527 N.E.2d 1033, 1034–1035 (3d Dist.1988).

It is undisputed that at the time of acquisition of these interests, Gunn caused to have conducted an index search which failed to show the bankruptcy case and any

potential avoidability of the deed from Hill to Buy Right. Because the Trustee did not timely file a copy of the Debtor's bankruptcy petition with the Cook County Recorder of Deeds, the language contained in sections 549(c) and 550(b) shields subsequent transferees for value, in good faith and without knowledge from liability. *See* H.R.Rep. 595, 95th Cong., 1st Sess. 375–376 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 90 (1978).

▇▇▇▇▇ Moreover, the Court disagrees with the Trustee's contention that the undisputed fact that the deed from Hill to Buy Right was a quitclaim deed instead of a warranty deed raises notice by inference that there may have been a defect in the title. Pursuant to the Illinois Conveyances Act, 765 ILCS 5/0.01 *et seq.*, quitclaim deeds convey good title:

> Every [quitclaim] deed in substance in the form described in this Section, when otherwise duly executed, shall be deemed and held a good and sufficient conveyance, release and quit claim to the grantee, his heirs and assigns, in fee of all the then existing legal or equitable rights of the grantor, in the premises therein described. . . .

765 ILCS 5/10. A quitclaim deed is equally as effectual to pass title as a warranty deed with full covenants. *Favata v. Mercer*, 409 Ill. 271, 276–277, 99 N.E.2d 116, 119 (1951). Accordingly, the mere fact that the deed from Hill to Buy Right was a quitclaim deed lacking all covenants of title contained in a warranty deed, is insufficient to raise the inference that there was a defect in the title to the Property.

Most significantly, the Trustee has furnished no evidence that would show that Gunn and Wesav should have been on notice to investigate further as of November 6, 1992. The chain of title shows that Gunn received a warranty deed from Buy Right, nothing more. In addition, there is no evidence showing anything unusual about the sale of the Property from Buy Right to Gunn that would have put her or Wesav on notice at the time of her purchase that more inquiry into the circumstances of the prior deed from Hill to Buy

Right was necessary. Pursuant to Gunn's unrebutted affidavit, the circumstances of the sale presented a typical set of circumstances for the sale of a residential home.

The Trustee has attempted to mask his failure to promptly record a copy of the petition with the Cook County Recorder of Deeds by attaching a document to his pleadings entitled a "Security Search" dated November 20, 1992. The Trustee, however, does not show that this document constitutes a search of the grantor-grantee index. Furthermore, it fails to establish that Gunn and Wesav had any notice of the bankruptcy case as of the time of Gunn's purchase from Buy Right. While the security search does reference the Debtor's bankruptcy case, from the face of the document, it is not clear when the bankruptcy petition was recorded or if it was prior to the time of Gunn's purchase from Buy Right. The date of the security search, November 20, 1992, is certainly *after* the Property was transferred to Gunn and mortgaged to Wesav. More importantly, the Trustee does not dispute the uncontroverted evidence that he failed to record the bankruptcy petition prior to Gunn and Wesav receiving their interests in the Property. Hence, this security search, which contains a disclaimer that it is not a title policy or to be relied upon, does not constitute any evidence that Gunn and Wesav had knowledge of the pendency of this bankruptcy case before they paid their consideration for their interests in the Property.

The Trustee cites *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890 (7th Cir.1988) for the proposition that Gunn and Wesav had enough facts to put them on notice that there may have been a problem with the title. The Trustee quotes from *Bonded Financial* which states, in part, that a purchaser cannot close his eyes to facts which would suggest problems in the title, then deny knowledge of same. 838 F.2d at 898. The court further opined, however, that "[a] transferee that lacks the information necessary to support an inference of knowledge need not start investigating on his own." *Id.* The *Bonded Financial*

court held that the transferee's failure to make inquiry into the facts in that case did not permit the court to attribute knowledge to the transferee. Hence, *Bonded Financial* does not support the Trustee's position that Gunn and Wesav had enough facts to put them on notice that there may have been a problem in the title to the Property. The record is devoid of any showing that Gunn and Wesav had any inclination that there was a problem with the title to the Property.

The Trustee cites several cases for the proposition that the transfer of the Property here is void, and thus sections 549 and 550 are inapplicable. *See e.g., In re Garcia*, 109 B.R. 335 (N.D.Ill.1989); *In re Young*, 14 B.R. 809 (Bankr.N.D.Ill.1981). The problem with the Trustee's argument, however, is that these cases involved delinquent tax sales. Under Illinois real property law, a sale of the delinquent real estate taxes and the resulting statutory lien attaching to the real property is a sale of the claim for such, not any legal or equitable conveyance of the fee interest in the real estate itself. *See Thornton, Ltd. v. Kusper*, 77 Ill.App.3d 192, 197, 32 Ill.Dec. 669, 671, 395 N.E.2d 1050, 1054 (1st Dist.1979). Those cases are distinguishable from the case at bar because the transfers in those cases were not of the underlying real property, like in this matter, but rather transfers of only a tax claim against the debtor. In the instant proceeding, there were conveyances of the fee interest in the Property by the quitclaim deed from Hill to Buy Right and the warranty deed from Buy Right to Gunn who mortgaged the Property to Wesav. These are all transfers of the fee interests in the Property, allowing Gunn and Wesav to invoke the exceptions in sections 549(c) and 550(b) as a safe harbor for subsequent transferees for value, in good faith and without notice.

In addition, the Trustee's reliance on *In re Pettibone Corp.*, 110 B.R. 848 (Bankr. N.D.Ill.1990) is misplaced. The *Pettibone* court held two personal injury lawsuits filed against the debtor in violation of the automatic stay void. The *Pettibone* facts are clearly distinguishable from the matter at bar. *Pettibone* did not involve a transfer of real property which would permit invocation of sections 549(c) or 550(b).

In another case cited by the Trustee, *In re BNT Terminals, Inc.*, 125 B.R. 963 (Bankr.N.D.Ill.1990), the court voided a transfer of property in violation of the automatic stay, noting that the assignee of a lien who took in good faith and without notice for valuable consideration had no enforceable right or interest in the real property. Distinguishable from the facts in this matter, the lien assignment voided in *BNT Terminals* was made one day prior to the filing of the case and was recorded after the case was filed. The court found timing to be critical and that section 549 did not apply because the unauthorized transfer was made pre-petition and conferred no legally enforceable interest in the estate property or resulting proceeds. 125 B.R. at 972–973. Moreover, the assignee of the lien did not receive a conveyance of the underlying promissory note. Consequently, the court found the assignee to be akin to a purchaser of stolen goods and thus not a bona fide purchaser, all contrary to the facts here.

Additionally, *Richard v. Chicago*, 80 B.R. 451 (N.D.Ill.1987), is factually distinct from the matter at bar. The *Richard* court acknowledged the good faith purchaser exception embodied in section 549(c) to the rule that transfers in violation of the automatic stay are void. However, the court found section 549(c) inapplicable because the real property was located in the same county in which the bankruptcy case was commenced. Prior to the 1984 amendments to the Bankruptcy Code, section 549(c) did not apply unless the subject property was located outside the county in which the bankruptcy case was commenced. *See In re Centre de Trictos de Gaspe*, 782 F.2d 905, 907 (11th Cir.1986). The current and operative version of the section is not so restricted.

Finally, *Knopfler v. Glidden Co.*, 149 B.R. 517 (Bankr.N.D.Ill.1992) is readily distinguishable. There, the creditor transferee voluntarily accepted post-petition payments on pre-petition debts from property

of the estate. The court found that these actions constituted a violation of the automatic stay. Noticeably absent from that decision, however, is any discussion pertaining to section 549(c) because the creditor transferee would not have come within the purview of section 549(c). There was no transfer of real property.

Turning to section 550(b), the Court finds that Gunn and Wesav are mediate transferees of the initial transferee from the Debtor, Buy Right. They took the Property from Buy Right without actual knowledge of the avoidability of the transfer. Moreover, they also took the Property before any filing of the bankruptcy petition by the Trustee with the Cook County Recorder of Deeds that would have put them on notice that the previous transfer was avoidable. Finally, Gunn paid $49,500.00 of which she borrowed $47,000.00 from Wesav as consideration for the transfers. Accordingly, because Gunn and Wesav took their interests in the Property for valuable consideration, in good faith, and without actual or constructive knowledge of the avoidability of the previous transfer from the Debtor to Buy Right, they fit with the exception to the Trustee's recovery powers under the provisions of section 550(b). The Court holds that the bona fide purchaser defense can, and on these facts, does apply to the section 542 turnover action brought by the Trustee.

The Court denies the Trustee's cross-motion for summary judgment. On these facts, and for his failure to timely record a copy or notice of the bankruptcy petition before the transfers to Gunn and Wesav were recorded, the Trustee is not entitled to judgment as a matter of law.

## VI. CONCLUSION

For the reasons set forth herein, the Court hereby grants the motion of Gunn and Wesav for summary judgment and denies the motion of the Trustee for summary judgment. The Court's decision may effectively render Gunn's cross-claim against Buy Right moot. That cause of action is set for a pretrial conference on September 9, 1993 at 9:00 a.m. A separate preliminary pretrial order is concurrently entered herewith.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

Separate orders shall be entered pursuant to Federal Rule of Bankruptcy Procedure 7058.