92 F.3d 1187
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
BANKERS TRUST CO. OF CALIFORNIA N.A., as Trustee, Plaintiff-Appellee,
v.
BENEFICIAL ILLINOIS INC., Mildred Clayton, Adele Jenkins,
and Chicago Title and Trust Co., Defendants,
v.
Thelma HOGG, as Independent Administrator of the Estate of
Webster N. Clayton, Jr., Deceased, Proposed
Intervenor/Appellant.
 No. 95-3522.
 United States Court of Appeals, Seventh Circuit.
 Argued June 12, 1996.
Decided Aug. 5, 1996.
 
 Before FLAUM, RIPPLE and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Webster Clayton filed a motion to intervene in Bankers Trust's sale of a parcel of real property pursuant to a judgment of foreclosure. Webster filed this motion to assert his fifty-percent interest in the property. The district court denied Webster's petition for intervention. This timely appeal follows.[1] For the reasons set forth below, we vacate the judgment of the district court denying Webster's motion and remand for further proceedings.
 
 PROCEDURAL HISTORY
 
 2
 In 1989, Webster Clayton executed and recorded a quitclaim deed to Mildred Clayton, giving her his entire interest in their marital home, located at 10325 Rhodes Avenue in Chicago, Illinois. Some time thereafter, Webster and Mildred decided to end their marriage and on March 19, 1990, a divorce decree was entered in the Circuit Court of Cook County. This decree, however, was never recorded with the Cook County Recorder of Deeds. In the divorce decree, Webster and Mildred stipulated that the Chicago residence was marital property and that they were each awarded fifty-percent of the net equity of the residence. Pursuant to a July 26, 1990 stipulated order, Mildred agreed to purchase Webster's share with monthly payments of $1,000 until the balance of $28,236.36 (the estimated value of Webster's one-half interest in the property) was paid. This order was also not filed with the recorder of deeds. Mildred made only the first three payments. Under the terms of the order, Mildred's default rendered the order void.
 
 
 3
 On April 1, 1992, Mildred Clayton and Adele Jenkins (Mildred's daughter from a previous marriage) signed a note for $77,600. This note was secured by a mortgage on the Chicago residence. The mortgage note was issued by Old Stone Credit Corporation of Illinois and, on April 21, 1992, was assigned to Bankers Trust Company of California N.A. The mortgage note was recorded with the Cook County Recorder of Deeds. Mildred and Adele defaulted on the note and as a result, Bankers Trust filed a foreclosure complaint on November 24, 1993. Several bankruptcy proceedings were filed by Mildred and her daughter, delaying the foreclosure proceedings. However, on January 31, 1994, Bankers Trust obtained a judgment of foreclosure. An amended judgment of foreclosure in Bankers Trust's favor was entered on March 1, 1995. Notice of the foreclosure sale of the property, to be held on August 17, 1995, was filed on July 19, 1995.
 
 
 4
 On August 11, 1995, Webster filed an emergency motion to intervene in the foreclosure proceedings. In this motion, Webster alleged that he first learned of the foreclosure action in June of 1995, and that he had retained counsel to investigate the matter on July 18, 1995. Webster asserted that because of Bankers Trust's constructive notice of his interest (i.e., the divorce decree providing Webster with a fifty-percent interest in the residence), he should be allowed to intervene in the sale of the property and assert his interest. Webster's motion was filed within one week of the scheduled Special Commissioner's Sale of the foreclosed parcel.
 
 
 5
 After an August 11, 1995 hearing, the district court denied Webster's motion to intervene. On August 28, 1995, Webster filed a motion to reconsider. The motion was discharged as moot when Adele Jenkins filed for bankruptcy. Jenkins' bankruptcy petition was eventually dismissed and on October 10, 1995, Webster's motion for reconsideration was renoticed, heard, and denied. Accordingly, the sale was allowed to proceed. Webster now appeals.
 
 DISCUSSION
 
 6
 Webster argues that the divorce decree entered in the Circuit Court of Cook County constituted constructive notice to Bankers Trust of his fifty-percent interest in the property and, therefore, the district court erred in denying his motion to intervene in the foreclosure proceedings.
 
 
 7
 Because the right to intervene is purely procedural, federal civil procedure regarding intervention is applicable in this diversity action. Williams v. Katz, 23 F.3d 190, 192 (7th Cir.1994). Rule 24 of the Federal Rules of Civil Procedure provides, in pertinent part:
 
 
 8
 (a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 
 
 9
 (b) Permissive intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.
 
 
 10
 In his motion to intervene, Webster did not specify whether he was requesting intervention as a matter of right, Rule 24(a), or permissive intervention, Rule 24(b). However, in his appellate brief, Webster argues only that he is entitled to intervention as a matter of right. To the extent that Webster suggests in his reply brief that permissive intervention would have been appropriate, he has waived the claim by failing to present it in his original appellate brief. United States v. Hubbard, 61 F.3d 1261, 1273 (7th Cir.1995), cert. denied, 116 S.Ct. 1268 (1996).
 
 
 11
 An applicant requesting intervention as a matter of right must establish that "(1) the application is timely; (2) the applicant has an 'interest' in the property or transaction which is the subject of the action; (3) disposition of the action as a practical matter may impede or impair the applicant's ability to protect that interest; and (4) no existing party adequately represents the applicant's interest." Security Ins. Co. of Hartford v. Schipporeit, Inc., 69 F.3d 1377, 1380 (7th Cir.1995). The absence of any one of these factors requires a denial of the motion for intervention. American Nat'l Bank and Trust Co. of Chicago v. City of Chicago, 865 F.2d 144, 148 (7th Cir.1989). The denial of a petition for intervention as a matter of right is reviewed de novo, except for the timeliness factor, which is reviewed for an abuse of discretion. B.H. v. McDonald, 49 F.3d 294, 297 (7th Cir.1995).
 
 
 12
 In denying Webster's motion for intervention, the district court found that Webster failed to establish the second factor. The court held that because Webster's interest in the property was subordinate to Bankers Trust's mortgage on the property, he had no grounds to contest the foreclosure proceedings. The district court reasoned: "The Illinois statutes place the burden on the landowner to record the interest so that a lender who is not on notice of the interest can proceed. There's no indication that the plaintiff in this case was on notice, on actual notice. The argument about constructive notice, I believe, given the length of time that occurred, is not one that should carry the day, or it would swallow up the reason for the requirement of recording." (R. 43-1 at 9-10.)
 
 
 13
 Section 28 of the Illinois Conveyances Act, Ill.Ann.Stat. ch. 765, act 5, sec. 28, imposes the following general recording requirement:
 
 
 14
 Deeds, mortgages, powers of attorney, and other instruments relating to or affecting the title to real estate in this state, shall be recorded in the county in which such real estate is situated....
 
 
 15
 Additionally, section 30 of the Act provides:
 
 
 16
 All deeds, mortgages and other instruments of writing which are authorized to be recorded, shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers, without notice; and all such deeds and title papers shall be adjudged void as to all such creditors and subsequent purchasers, without notice, until the same shall be filed for record.
 
 
 17
 Ill.Ann.Stat. ch. 765, act 5, sec. 30.
 
 
 18
 Hence, in Illinois, the primary means of charging any party with notice of an interest in real property is to record that interest with the appropriate county recorder of deeds. Skidmore, Owings & Merrill v. Pathway Financial, 527 N.E.2d 1033, 1034 (Ill.App.Ct.1988). Because Webster did not record the divorce decree with the Cook County Recorder of Deeds, Bankers Trust argues that its mortgage is not subject to Webster's interest and, therefore, Webster had no right to intervene in the foreclosure proceedings. We disagree.
 
 
 19
 The recording requirement of the Illinois Conveyances Act is not absolute--a prior unrecorded interest in property is void against subsequent creditors and purchasers only if these subsequent parties are without notice of the prior interest. This notice may be actual or constructive. See Anthony v. Wheeler, 22 N.E. 494, 496 (Ill.1889) ("The recording acts, for the purposes of information and constructive notice, have not altered or abolished the rules of equity in relation to actual and constructive notice by means other than the recording act.") (quotation omitted). It has long been the law in Illinois that subsequent purchasers of property are chargeable with constructive notice of unrecorded interests in the chain of title which, with the diligence and investigative skills of an ordinary person, would be readily discovered.[2] See, e.g., Smith v. Grubb, 84 N.E.2d 421, 428 (Ill.1949); Chicago & E.I.R. Co. v. Wright, 38 N.E. 1062, 1063 (Ill.1894); Pacemaker Food Stores, Inc. v. Seventh Mont Corp., 453 N.E.2d 806, 813 (Ill.App.Ct.1983).
 
 
 20
 Webster argues that the divorce decree provided Bankers Trust with constructive notice of his interest in the property. In support of this claim, Webster points to the Illinois Supreme Court's decision in Clark v. Leavitt, 166 N.E. 538 (Ill.1929).
 
 
 21
 The facts in Leavitt were as follows. Charles Clark owned real property in Piatt County, Illinois. In his will, he devised this property to his daughter, Stella Clark, subject to the condition that, should she die without issue, the property would be sold and divided equally among Charles Clark's surviving siblings. Upon Charles Clark's death, his will was probated and entered in the Record of Wills of Piatt County. However, it was never recorded with the Piatt County Recorder of Deeds. After receiving her interest, Stella Clark sold the property. However, Stella Clark never had any children. Accordingly, after her death, the trustee of Charles Clark's estate attempted to reclaim and sell the property as provided in the will.
 
 
 22
 Had the subsequent purchasers of the property ("the appellants") searched the records of the Piatt County Recorder of Deeds, they would have found that Charles Clark was the record owner of the property. Since there was nothing in the office of the recorder of deeds indicating how Stella Clark obtained her interest, the appellants should have suspected that she obtained title by descent and, therefore, they should have searched the Record of Wills of Piatt County. Had they done as much, they would have discovered that Stella Clark's interest could revert to Charles Clark's siblings upon her death. The Leavitt court held that because the appellants had constructive notice of the terms of the will, Charles Clark's surviving siblings were the rightful owners of the property. Regarding the appellants' duty to search the record of wills, the Leavitt court explained:
 
 
 23
 One examining the condition of a title, as is well recognized, is required to look further than the recorder's office to know the condition of the title. If there be a judgment against the landowner of record in that county, either as an original judgment or a transcript of a foreign court, the purchaser of real estate is required to take notice of the lien of such judgment though it is not filed of record in the recorder's office.
 
 
 24
 Id. at 540. Following Leavitt's lead, in Eckland v. Jankowski, 95 N.E.2d 342 (Ill.1950), the Illinois Supreme Court held:
 
 
 25
 A purchaser of land is charged with constructive notice not only of whatever is shown in the records of the office of the recorder of deeds, but in addition, with matters affecting the title of the land which appear in the records in the circuit, probate, and county courts in the county where the land is situated.
 
 
 26
 Eckland, 95 N.E.2d at 344.
 
 
 27
 Applying Leavitt and Eckland to the instant case, because the property at issue is located in Cook County, Bankers Trust was on constructive notice of "matters affecting title of the land" which, though not recorded with the county recorder, appeared in the records of the Circuit Court of Cook County at the time Bankers Trust acquired its interest in the property. It would appear, therefore, that the divorce decree provided Bankers Trust with constructive notice of Webster's interest.
 
 
 28
 However, Bankers Trust argues that Leavitt and Eckland are not applicable here. Leavitt and Eckland concerned the recording of wills. As Bankers Trust correctly notes, wills are not subject to the general recording rules set-forth in sections 28 and 30 of the Illinois Conveyances Act.[3] Leavitt, 166 N.E. at 539; Ill.Ann.Stat. ch. 765, act 5, sec. 38. Nonetheless, we rely on Leavitt and Eckland only to the extent that they state a general rule of constructive notice regarding county court records. Because the recording requirements of the Illinois Conveyances Act do not purport to abolish constructive notice, we find that the rule of constructive notice enunciated in Leavitt and Eckland is applicable to the instant case.[4] See In re Richardson, 75 B.R. 601, 605 (Bankr.C.D.Ill.1987); In re Ehrlich, 59 B.R. 646, 650 (Bankr.N.D.Ill.1986); but see In re Hill, 156 B.R. 998, 1009 (Bankr.N.D.Ill.1993). Cf. Radovanov v. Land Title Co. of America, Inc., 545 N.E.2d 351, 355 (Ill.App.Ct.1989) (because insurance policy provided coverage for prior unrecorded interests contained in all records which, by law, impart constructive notice, the policy was found to insure against prior unrecorded interests entered in the records of the local county court), aff'd, 550 N.E.2d 565 (Ill.1990).
 
 
 29
 Bankers Trust also maintains that even if Leavitt and Eckland apply, it should not be charged with constructive notice of the terms of the divorce decree. Bankers Trust contends that because Webster quitclaimed the property to Mildred during their marriage, it had no reason to suspect that the divorce decree would have affected Mildred's interest in the property.
 
 
 30
 Bankers Trust should have known that despite Webster's prior conveyance of the deed to Mildred, the residence might still be considered part of the marital estate. Because Webster quitclaimed the house to Mildred during their marriage, it was presumed to be marital property under the Illinois Marriage and Dissolution of Marriage Act: "all property acquired by either spouse after the marriage and before a judgment of dissolution of marriage ... is presumed to be marital property, regardless of whether title is held individually...." Ill.Ann.Stat. ch. 750, act 5, sec. 503(b). Although this presumption would be rebutted if Webster had conveyed the residence as a gift, or in exchange for non-marital property, Ill.Ann.Stat. ch. 750, act 5, sec. 503(a)(1), and (2), we do not know how or why Webster conveyed the property to Mildred when he did. In any event, it is always possible that spouses will agree to treat a parcel of property as marital property. Here, Webster and Mildred made such a stipulation regarding the Chicago property despite the quitclaim deed and, consequently, each took a fifty-percent interest in the property.
 
 
 31
 At the time it accepted its interest in the property, Bankers Trust knew that Mildred was divorced. (R. 1-1, ex. C.) Although Webster had quitclaimed the deed to Mildred, Bankers Trust should have suspected that the house might still be marital property and, therefore, that Mildred might not have complete title. Had Bankers Trust searched the records of the Circuit Court of Cook County for a divorce decree recorded after the 1989 quitclaim deed, it would have found the 1990 divorce decree and discovered Webster's fifty-percent interest in the property. Accordingly, we find that Bankers Trust had constructive notice of Webster's interest in the Chicago property and, therefore, Bankers Trust's mortgage is subordinate to Webster's prior interest.[5]
 
 
 32
 We now consider whether the foreclosure proceedings impaired Webster's interest in the property. " 'The existence of "impairment" depends on whether the decision of a legal question involved in the action would as a practical matter foreclose rights of the proposed intervenors in a subsequent proceeding.' " American Nat'l Bank and Trust Co., 865 F.2d at 147-48 (quoting Meridian Homes Corp. v. Nicholas W. Prassas & Co., 683 F.2d 201, 204 (7th Cir.1982)). In its brief, Bankers Trust suggests several alternate courses of action for Webster--"[Webster] could have sued Mildred directly, or sought relief in her bankruptcies. He could have gone back to the divorce court to seek a contempt for violation of the order relating to her purchase of the property. He conceivably could have cross[-]claimed against Mildred as part of this action, had he spent any time from April 1990 through November 1993 trying to ascertain the status of this property, and moved in a timely manner. To the extent that he truly believes he had a legally cognizable cause of action against the lenders (which Bankers Trust disputes), he could have tried that avenue." Appellee's Brief at 24.
 
 
 33
 It is doubtful that Webster would accomplish anything by attempting to recover against his former spouse, Mildred Clayton, considering her significant financial woes. Webster does have the option of pursuing an action against Bankers Trust. However, litigation is both risky and costly. If Webster has an ownership interest in the property, he should be entitled to collect proceeds from the sale of the property before relinquishing that interest. Denying Webster's motion to intervene would deprive him of the security of his fifty-percent ownership of the property and require him to file a separate action to seek his share of the proceeds. For this reason, we find that Webster has established impairment of his property interest.
 
 
 34
 Additionally, there is no dispute that Webster's interests were not adequately represented at the foreclosure proceedings--his interest in the property is in conflict with the interests of all parties involved in the proceedings.
 
 
 35
 Finally, we turn to the issue of timeliness. In determining whether a motion to intervene is timely, four factors must be considered: "1) the length of time the intervenor knew or should have known of his interest in the case, 2) the prejudice to the original party caused by the delay, 3) the resulting prejudice to the intervenor if the motion is denied, and 4) any unusual circumstances." People Who Care v. Rockford Bd. of Educ., 68 F.3d 172, 175 (7th Cir.1995).
 
 
 36
 Webster argues that his motion to intervene was timely because (1) he lived in Iowa; (2) he was never notified of Bankers Trust's mortgage on the property or the foreclosure proceedings; and (3) he did not discover the foreclosure proceedings until June of 1995. When Webster should have intervened is open to debate. The foreclosure proceedings were on record with the Cook County Recorder of Deeds. Considering the fact that Webster's interest was unrecorded, Webster would have been wise to periodically check the records of the Cook County Recorder. If he had, he would have discovered Bankers Trust's interest in the property well before June of 1995 (the mortgage note was recorded in the spring of 1992). Moreover, we do not know the extent of any prejudice Bankers Trust suffered as a result of Webster's delay, or whether there were any "unusual circumstances" that might compel a finding of timeliness.
 
 
 37
 Contrary to Bankers Trust's assertions, the district court never made any findings regarding the timeliness of Webster's motion. Because a determination of timeliness under Rule 24 rests within the discretion of the district court, the case must be remanded to the district court to decide the issue.
 
 
 38
 Accordingly, the district court's order denying Webster's motion for intervention as a matter of right is vacated and the case is remanded to the district court for a determination of timeliness.
 
 
 
 [1]
 Subsequent to the filing of this appeal, Webster Clayton died. Thelma Hogg, private administrator of the estate of Webster Clayton, represents his interests on appeal
 
 
 [2]
 For instance, where a physical examination of the property would reveal a third party's unrecorded interest in the property, a purchaser is chargeable with constructive notice of this interest. Miller v. Bullington, 44 N.E.2d 850, 853 (Ill.1942); Burnex Oil Co. v. Floyd, 245 N.E.2d 539, 543 (Ill.App.Ct.1969)
 
 
 [3]
 There is a provision for the recording of wills in section 33 of the Illinois Conveyances Act:
 All original wills duly proved, or copies thereof duly certified, according to law, and exemplifications of the record of foreign wills made in pursuance of the law of congress in relation to records in foreign states, may be recorded in the same office where deeds and other instruments concerning real estate may be required to be recorded; and the same shall be notice from the date of filing the same for record as in other cases, and certified copies of the record thereof shall be evidence to the same extent as the certified copies of the record of deeds.
 Ill.Ann.Stat. ch. 765, act 5, sec. 33. However, unlike section 30, section 33 does not provide that failure to record in the county recorder's office renders the prior property interests void as to subsequent creditors and purchasers of the land.
 
 
 [4]
 We note that the Illinois legislature has specifically eliminated constructive notice of certain prior unrecorded interests in real estate. For instance, Ill.Ann.Stat. ch. 735, act 5, sec. 12-101 provides that a judgment cannot become a lien on property--and therefore cannot be effective against subsequent purchasers--until it is recorded with the recorder of deeds in the county where the land is situated. Additionally, the Mechanic's Lien Act requires a timely filing with the county recorder of deeds in order to secure a mechanic's lien on property. Ill.Ann.Stat. ch. 770, act 60, sec. 7. However, no such legislation has been enacted addressing ownership interests resulting from divorce decrees
 
 
 [5]
 In dismissing Webster's constructive notice argument, the district court expressed concern over the amount of time that Webster's interest had gone unrecorded. On April 21, 1992, when Bankers Trust accepted the mortgage on the property, it was on constructive notice of Webster's interest. Although the divorce decree was filed over two years before, on March 19, 1990, we do not find this sufficient grounds to excuse Bankers Trust's failure to discover Webster's interest in the residence