**In re James E. BORCHERT, Debtor.**

**Bankruptcy No. 83-05518.**

United States Bankruptcy Court,
D. North Dakota.

July 15, 1992.

Phillip D. Armstrong, Chapter 7 Trustee.

Max D. Rosenberg, Bismarck, N.D., for debtors.

Brad A. Sinclair, Fargo, N.D., for Equitable Life.

## ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This matter is before the court on motion for reconsideration filed on July 7, 1992, by Equitable Life Assurance Society of the United States (Equitable) and Guardian Life Insurance Company of America (Guardian). By the instant motion the movants ask the court to vacate both its order of contempt entered June 8, 1992, as well as its earlier order for turnover entered August 19, 1991. Although both orders were entered after notice and opportunity for hearing and although both movants acknowledge having received copies of the trustee's motion for turnover and later motion for contempt, neither filed a formal response with the court.

Both claim not to have been aware of the Debtor's bankruptcy filing until receipt of the trustee's motion for turnover by which time neither was in actual possession of estate property. Before discussing the merits of these arguments, a brief history of the relevant facts will be recounted.

The Debtor filed for relief under Chapter 7 on October 11, 1983. Schedules filed contemporaneously with the petition revealed IRA funds held by Equitable in the sum of $2,041.11 and by Guardian in the sum of $3,572.18. The predecessor trustee, William Daner, by letters dated February 25, 1985, and addressed to Equitable and Guardian respectively, advised them of the date of the Debtor's Chapter 7 filing, his status as trustee and formally demanded that they surrender possession of the respective sums to him pursuant to provisions of the United States Bankruptcy Code. The letters were copied to the Debtor's attorney, Ross H. Espeseth, who in turn sent identical letters to Equitable and Guardian again advising them of the date of the Debtor's bankruptcy filing but further advising them of a dispute between the Debtor and the trustee over rights to the IRA accounts. Mr. Espeseth asked that the funds not be turned over to the trustee until the dispute was resolved. Espeseth's letter was dated March 4, 1985. No further correspondence took place until Trustee Armstrong assumed control of the case as successor trustee. On November 20, 1990, he made another letter demand upon both Equitable and Guardian for turnover of the IRA funds. Both Equitable and Guardian responded to the letter advising Armstrong that the accounts were no longer active and that no funds were in their possession currently. These responses prompted a formal motion for order directing turnover which neither Equitable nor Guardian responded to. The ensuing order for turnover entered August 19, 1991, directed Equitable and Guardian to deliver to the trustee the IRA funds as revealed in the Debtor's schedules, for an accounting or for delivery of their value.

No turnover occurred and on May 6, 1992, the trustee moved for a finding of contempt. Again no formal response was filed. Equitable did, however, submit a letter to the clerk's office advising that no account existed. No appearance by either Equitable or Guardian was made at a contempt hearing held on May 27, 1992.

In defense of their failure to respond to the several motions, both movants assert that since they had no funds in their possession at the time Trustee Armstrong filed his motion for turnover, and having previously advised Armstrong of this fact, they felt a formal reply unnecessary.

According to Equitable's records, the Debtor did open an IRA account with Equitable but, unaware of any competing claim to the funds, Equitable asserts that it returned the IRA funds to the Debtor in 1987. Similarly, Guardian issued an IRA product to the Debtor in 1975 but also asserts that upon request made by the Debtor, it surrendered the funds to the Debtor in 1986 unaware of any competing claim.

Both profess to not have received Trustee Daner's 1985 turnover demand nor Attorney Espeseth's follow up letter. Consequently, both claim not to have had knowledge of the pending Chapter 7 nor the trustee's claim to the IRA funds until Trustee Armstrong's involvement in the case. Equitable says it knew nothing of the Debtor's bankruptcy filing until receiving Armstrong's motion for turnover. Guardian claims it knew nothing until receiving Armstrong's November 1990 demand letter.

Critical is whether Equitable and Guardian can be presumed to have had notice of the Debtor's Chapter 7 filing. It is upon this issue that all else turns.

█ Once a petition in bankruptcy is filed, section 362 imposes an automatic stay which prevents anyone from "exercising control over property of the estate". 11 U.S.C. § 362(a)(3). Moreover, section 542 places an affirmative duty upon an entity in possession of property belonging to the estate to surrender the same to the trustee. *See generally, In re Knaus,* 889 F.2d 773 (8th Cir.1989) where the court, recounting the principles behind section 542, recalled the following language of Chief Bankruptcy Judge Dennis Stuart:

> "The principle is simply this: That a person holding property of a debtor who files bankruptcy proceedings becomes obligated, upon discovering the existence of the bankruptcy proceedings, to return that property to the debtor (in Chapter 11 or 13 proceedings) or his trustee (in Chapter 7 proceedings)."

889 F.2d at 775.

Section 542, however, is more than a mere provision for turnover. Turnover is in essence a replevin type proceeding and obviously a person or party not in possession of property cannot return the property itself. There simply cannot be turnover of property that does not exist. *Maggio v. Zeitz,* 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948); *In re Robertson,* 105 B.R. 440 (Bankr. N.D.Ill.1989). The section provides for more than turnover of the actual property. It also provides that:

> "... an entity ... in possession ... *during the case* of property that the trustee may use, sell or lease under section 363 ... shall deliver to the trustee, *and account for,* such property, *or the value of such property* ...."

The foregoing is applicable to any entity that possessed property belonging to the debtor at any time during case pendency, whether or not it had possession at the time a demand for turnover was made. It means that such entity must account to the trustee for the property itself or be prepared to surrender its value if for some reason the property itself no longer exists. What this means in a Chapter 7 is that if an entity in possession of estate property receives notice of the bankruptcy filing but nonetheless transfers the property to anyone other than the trustee, it does so at its peril. In the absence of the property itself the trustee in such instance is entitled to recover the value of the estate property from the entity making the transfer. In the case at bar, Trustee Armstrong sought and obtained an order directing turnover of the property itself *or* delivery of the value of the property.

The only exception to a trustee's right to recover the value of estate property wrongfully transferred is if at the time of the transfer the entity had neither actual notice nor actual knowledge of the commencement of the case and the transfer was made in good faith. 11 U.S.C. § 542(c); *In re Gailey,* 119 B.R. 504 (Bankr.W.D.Pa. 1990).

█ Equitable and Guardian were under a duty to at least freeze the Debtor's IRA accounts and not permit the Debtor to gain control of them once they received notice of

knowledge of the pending bankruptcy case. The exculpatory provision of section 542(c) brings us back to the question of whether Equitable and Guardian can be presumed to have received notice. Recall in 1985 each was sent a letter by Trustee Daner as well as one by the Debtor's attorney, Mr. Espeseth.

■ It is a long standing principle that mail that is properly addressed, stamped and deposited in the mails is presumed to be received by the addressee. *Arkansas Motor Coaches v. Commissioner of Int. Rev.*, 198 F.2d 189 (8th Cir.1952); *In re Bucknum*, 951 F.2d 204 (9th Cir.1991). The presumption of receipt is a strong one not easily overcome by a mere affidavit to the contrary. It is entirely possible that one or the other of the movants might not have received one or the other of the 1985 letters but it is incredulous to think that four letters sent by two different people were not received by two different intended recipients. An affidavit suggesting non-receipt of a single letter by a single recipient might be worthy of belief but for two separate entities to both claim to have no record of receiving the letters is a rather convenient defense at this late date. Countering the movants' suggestion is Mr. Espeseth's testimony given at the May 24th hearing wherein he stated that he received a copy of Trustee Daner's demand letter. This would suggest that the letters were indeed mailed.

■ This court is satisfied that Equitable and Guardian have failed to overcome the presumption of receipt and must therefore be regarded as having had notice and knowledge of the Debtor's October 11, 1983, bankruptcy petition when, in 1987 and 1986 they transferred to the Debtor IRA funds belonging to the estate and which, under section 542, they were obligated to surrender to the trustee.

As a consequence, the section 542(c) exception does not relieve either of them from paying over to Trustee Armstrong the value of the IRA funds in their respective control as of October 11, 1983.

For the foregoing reasons the motion for reconsideration and relief from the contempt order is DENIED. This court's order finding Equitable Life Assurance Society of the United States and Guardian Life Insurance Company of America in contempt stands as entered.

SO ORDERED.