**In re U.S.A. DIVERSIFIED PRODUCTS, INC., Debtor.**

**CARLTON, FIELDS, WARD, EMMANUEL, SMITH & CUTLER, P.A., Appellant/Defendant,**

v.

**R. David BOYER, Trustee, Appellee/Plaintiff.**

No. 1:95–CV–348.

United States District Court, N.D. Indiana, Fort Wayne Division.

March 15, 1996.

Robert L. Nicholson and Howard B. Sandler, Beckman Lawson Sandler Snyder and Federoff, Fort Wayne, IN, for R. David Boyer.

Loren G. Keenan, Legal Department 10–09, Farmington Hills, MI, for Michigan National Bank.

Michael P. O'Hara, and Thomas P. Yoder, Barrett & McNagny, Fort Wayne, IN, for

Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A.

Ellen L. Triebold, Trustee, Office of the U.S. Trustee, South Bend, IN.

## MEMORANDUM OF DECISION AND ORDER

WILLIAM C. LEE, District Judge.

This is an appeal from a decision of the Bankruptcy Court, filed by the law firm of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A. ("Carlton, Fields" or "Appellant"). The debtor is U.S.A. Diversified Products, Inc. ("Diversified" or "Debtor") and the Trustee is R. David Boyer ("Boyer" or "Trustee"). Notice of appeal from the decision of the U.S. Bankruptcy Court, Judge Grant, was filed on September 22, 1995 and the case was docketed in this court on October 17, 1995. Carlton, Fields filed a brief on November 16, 1995, Boyer filed a brief on December 4, 1995, and Carlton, Fields filed a reply brief on January 4, 1996. Oral argument was conducted before this court on February 26, 1996. For the following reasons, the decision of the Bankruptcy Court, entered on September 14, 1995, is hereby AFFIRMED.

## STANDARD OF REVIEW

▆ This court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a). Furthermore, the Federal Rules of Bankruptcy Procedure provide the applicable standard of review. Rule 8013 states:

> On an appeal the district court ... may affirm, modify or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

This high standard of review has been followed by district courts. *See, e.g., In re Clarkson,* 767 F.2d 417, 419 (8th Cir.1985); *In re Tesmetges,* 47 B.R. 385, 388 (E.D.N.Y. 1984). District courts review factual findings of bankruptcy courts under the "clearly erro-

neous standard." *Matter of Newman*, 903 F.2d 1150 (7th Cir.1990). The "clearly erroneous" language of the rule tracks the language found in Fed.R.Civ.P. 52(a), and cases construing the standard under 52(a) are equally applicable to bankruptcy cases. *Matter of Louisiana Industrial Coatings, Inc.*, 53 B.R. 464, 467 (E.D.La.1985). The U.S. Supreme Court reaffirmed its long-standing definition of this standard: "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). Finally, the standard of review of legal conclusions of a bankruptcy court is *de novo*. *In re Bonnett*, 895 F.2d 1155, 1157 (7th Cir.1989); *In re Global Western Development Corp.*, 759 F.2d 724, 726 (9th Cir.1985).

## STATEMENT OF FACTS

Diversified, an Indiana corporation engaged in the export and import business, filed a Chapter 11 bankruptcy petition on December 10, 1992. Dcn. p. 1.[1] In September 1992 Gregory Jones, then a partner in the Tampa, Florida, office of Carlton, Fields, was contacted by an attorney in New York who requested that Carlton, Fields represent Diversified, its president, Paul Davis, and his wife, Candice Davis, in a lawsuit filed against all three in Florida state court. Dcn. p. 2.; Tr. p. 124. On September 23, 1992, the debtor gave Carlton, Fields a check in the amount of $12,500.00 as a retainer for representation in the Florida case. Dcn. p. 2. On December 9, 1992, Davis wired the sum of $125,000.00 to Carlton, Fields, the money having come from an account at Merrill Lynch, Pierce, Fenner & Smith, Inc. *Id.* This account was under the name of UDI, Inc. *Id.* This money was transferred to fund a possible settlement of the Florida case. *Id.* Carlton, Fields learned of Diversified's bankruptcy on December 14, 1992, when Davis

told Dan Johnson (a Carlton, Fields associate who was assisting Jones in the Florida litigation) during a phone conversation that Diversified had filed a Chapter 11 petition. Dcn. p. 3. When Johnson inquired about the $125,000.00 that had been wired to Carlton, Fields just a few days before, Davis told him that the money came from Davis' personal funds. *Id.* Efforts to settle the Florida case were unsuccessful and, on February 10, 1993, Davis instructed Jones to return the money in Carlton, Fields' trust account to him. *Id.* After deducting $14,066.05 for attorneys fees and to replenish the retainer, Jones mailed Davis a check for $110,933.95 on February 24, 1993 (the check was dated February 22, 1993). *Id.* Two days before it mailed the check to Davis, Carlton, Fields received a letter, dated February 10, 1993, from the Chapter 7 trustee's counsel again informing the firm that Diversified had filed bankruptcy. *Id.* The bankruptcy case was converted to Chapter 7 on February 23, 1993, and Boyer was appointed Chapter 7 Trustee. *Id.* In late May of 1993, Boyer learned of the $125,000.00 wire transfer to Carlton, Fields. *Id.* By letter dated May 21, 1993, the Trustee's counsel informed Jones of the conversion to Chapter 7, of the Trustee's claim to the trust funds, and directed Carlton, Fields not to transfer any Diversified funds held by the firm without prior written instructions from Boyer. *Id.* By this time, of course, the money in the trust account had already been transferred to Davis. The Trustee brought the underlying case on May 28, 1993, in an attempt to recover the funds from Carlton, Fields. *Id.*

## DISCUSSION

 The underlying action was brought pursuant to 11 U.S.C. § 542, which identifies the duties imposed on those in possession of property of a bankruptcy estate. Section 542 states, in part, that:

> ... an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of the title, or that the debtor may exempt under sec-

---

1. References to the Decision of the Bankruptcy Court, entered on September 14, 1995, are designated "Dcn." References to the official trial transcript are designated "Tr."

tion 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate. 11 U.S.C. § 542(a). The courts have held that this section states the general rule that "any property of a debtor's estate held by any entity must be turned over to the trustee...." *In re NWFX, Inc.*, 864 F.2d 593, 596 (8th Cir. 1989). "There is no requirement in the Code that the trustee make demand, obtain a court order, or take any further action in order to obtain a turnover of the estate's property." *Matter of Larimer*, 27 B.R. 514, 516 (Bankr.D.Idaho 1983). In a § 542 action, the trustee carries the burden of proof. *In re High Sierra Transport, Inc.*, 101 B.R. 432, 434 (Bankr.M.D.Pa.1989). Furthermore, the parties in this case agreed that the trustee must carry this burden by clear and convincing evidence. *In re Hill*, 156 B.R. 998, 1006 (Bankr.N.D.Ill.1993).[2]

The parties in this case do not dispute that Carlton, Fields was an entity other than a custodian, or that the firm had the $125,-000.00 in its trust account during the case, or that the money constituted more than an inconsequential amount. Dcn. p. 6. The issues are: (1) whether the funds were property of the bankruptcy estate; (2) whether Carlton, Fields had possession, custody or control of the property; and (3) the nature of a turnover defendant's obligation to deliver and account for such property, or the value thereof. Finally, as Judge Grant noted, "[i]f these issues are resolved in favor of the trustee, the court must address Carlton, Fields' equitable defense that it did not know the money in its trust account was property of the estate." Dcn. p. 7.

Judge Grant held that: the money was owned by the debtor and became part of the bankruptcy estate on December 10, 1992;

Carlton, Fields was in "possession, custody, or control" of the property while it was in the firm's trust account; and, Carlton, Fields had an obligation to turn the money over to the Trustee (or, since the money was transferred out of the trust account, the law firm had to "account for ... the value of such property ..." by paying the Trustee $125,000.00). Judge Grant also rejected Carlton, Fields' equitable defense that it lacked knowledge that the money belonged to the estate. Accordingly, Judge Grant entered judgment for the plaintiff/appellee in the amount of $123,-523.99, together with prejudgment interest thereon at a rate of six percent (6%) per annum from May 28, 1993 to the date of judgment.[3]

**The Property of the Bankruptcy Estate**

The Bankruptcy Code defines estate property as follows:

(a) The commencement of a case under section 301, 302 or 303 of this title creates an estate. Such estate is comprised of all of the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1).

The Trustee argues that the evidence at trial revealed that the funds in the Merrill Lynch account were the property of the Diversified. Brief of Appellee pp. 4–6. The Trustee points out that Davis turned the Merrill Lynch account checkbook over to Diversified's Chapter 11 trustee, that the deposits into the account were collections of Diversified's receivables, and that the account bore Diversified's federal tax number and mailing address. *Id.*; Tr. pp. 10–11. The account was under the name "U.D.I., Inc.," which Davis told the Chapter 11 trustee, Mr. Goldberg, was simply an acronym for

---

**2.** As Judge Grant explained in his Decision (see pp. 5–6, n. 3), the clear and convincing standard originated in the Supreme Court decision in *Oriel v. Russell*, 278 U.S. 358, 362, 49 S.Ct. 173, 174, 73 L.Ed. 419 (1929). However, writes Judge Grant, *Oriel* was decided under the old Act, and it is unlikely that the clear and convincing standard survived the enactment of § 542. Nonetheless, since both parties agreed that the

trustee must prove his case by clear and convincing evidence, that is the standard that the bankruptcy court applied in this case.

**3.** The Trustee recovered $1,476.01 of the $125,-000.00 from another defendant in the underlying case. Thus, the recovery from Carlton, Fields was reduced accordingly.

U.S.A. Diversified Products, Inc. Tr. p. 17. The Trustee claims that since the funds transferred from Carlton, Fields to itself and Davis were the same funds that were in the Merrill Lynch account, which was owned by Diversified, they became part of the bankruptcy estate on December 10, 1992. Judge Grant agreed that the funds were the property of Diversified and so automatically became part of the estate once the bankruptcy petition was filed. Dcn. pp. 7–8.

Carlton, Fields argues that the funds were not part of the estate, and advances two theories to support its argument. First, appellant argues that since Davis transferred the funds to Carlton, Fields, Diversified was at that point divested of any property interest in the funds, and had only a cause of action against Davis for recovery of the money. Second, appellant argues that, even prior to the bankruptcy filing, the money was not the property of Diversified since money in a bank account does not constitute "property," but is merely a promise made by the bank to pay a debt owed to the depositor.

To support this second contention, appellant cites the case of *Citizens Bank of Maryland v. Strumpf,* —— U.S. ——, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995).[4] In *Strumpf,* the Supreme Court dismissed a debtor's claim that a bank had violated an automatic stay when it placed an administrative freeze on the debtor's bank account. Appellant quotes the following passage from *Strumpf:*

> [Debtor's] argument ... rests on the false premise that [the bank's] administrative hold took something from [the debtor], or exercised dominion over property that belonged to [the debtor]. That view of things might be arguable if a bank account consisted of money belonging to the depositor and held by the bank. In fact, however, it consists of nothing more or less than a promise to pay, from the bank to the depositor (citations omitted). Brief of Appellant p. 15.

Appellant claims, therefore, that Diversified had no property interest in the money on deposit in the Merrill Lynch account. Con-sequently, asserts appellant, "it is difficult to conceive how some metamorphosis occurred rendering the funds property of the estate because they had been transferred." Brief of Appellant p. 17.

Appellee responds that appellant's reliance on *Strumpf* is misplaced and that the language quoted by appellant is not significant. Appellee states:

> In *Strumpf,* the Supreme Court did not hold that the debtor's rights to receive from the bank an amount equal to its deposit was not the property of the estate; rather, it merely recognized the unremarkable fact that the depositor in a bank does not have an *in specie* claim against earmarked funds, but rather is a general creditor of the bank. Brief of Appellee p. 8.

Appellee cites the case of *In re Amdura Corp.,* 167 B.R. 640 (D.Colo.1994), which held that "[d]eposits in a bank to the credit of a debtor become property of the estate under section 541(a)(1). 4 Collier on Bankruptcy, P. 541.11 at 541–74 (15th ed. 1992)." Since the filing of the briefs presently before the court, the decision in *Amdura* was affirmed by the Tenth Circuit. 1996 WL 44143 (Feb. 5, 1996). The Tenth Circuit made no mention of the *Strumpf* decision in its discussion of a debtor's property interest in the funds in a bank account. *See also Sousa v. Bank of Newport,* 170 B.R. 492, 494 (D. Rhode Island 1994) (bankruptcy estate "includes funds held in a checking or savings account"); *In re Hardware Products, Inc.,* 9 B.R. 226, 227 (N.D.Ill.1981) (upon filing of the petition, "the debtor's property, including an unencumbered bank account, becomes part of the debtor's estate ..."). Nowhere in the *Strumpf* decision does the Supreme Court purport to change or abandon this well established rule of law.

In any case, argues appellee, the funds were withdrawn from the account prior to the creation of the bankruptcy estate, and at that point constituted property of the owner, Diversified. Appellee states that "[w]hile a depositor may have only a general claim

---

**4.** Appellant correctly points out that the *Strumpf* decision was not available at the time Judge Grant entered his decision, having been decided some six weeks later. Therefore, it is obviously not addressed in Judge Grant's decision.

against the bank for the amount on deposit, upon withdrawal the depositor has a claim to the withdrawn funds.... When Merrill Lynch identified the $125,000.00 to be transferred to the Carlton, Fields trust account, U.S.A. Diversified had an ownership interest in the transferred funds as the proceeds of its original deposit." Brief of Appellee p. 9.

As for appellant's argument that once the funds were withdrawn from the Merrill Lynch account by Davis, all Diversified had left was a cause of action against Davis, this argument fails. Appellant is apparently attempting to argue that Davis misappropriated the funds and, when he did so the day before the petition was filed, Diversified (and consequently the bankruptcy estate) was divested of any claim it had to the funds. However, the mere fact that the money was not in Diversified's possession at the time it filed its bankruptcy petition does not mean that it was divested of that property. As the Supreme Court has held, "§ 542(a) grants to the estate a possessory interest in certain property of the debtor that was not held by the debtor at the commencement of reorganization proceedings." *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 207, 103 S.Ct. 2309, 2314–15, 76 L.Ed.2d 515 (1983). Appellant believes that all Diversified had once Davis withdrew the money was a claim against Davis, and to permit the trustee to assert a claim to the funds would be to grant him something that Diversified did not have. Even assuming that all Diversified had was a claim against Davis, this argument is still directly contrary to the language in *Whiting,* wherein the Court stated that "[t]he fact that § 542(a) grants the trustee greater rights than those held by the debtor prior to the filing of the petition is consistent with other provisions of the Bankruptcy Code that address the scope of the estate." *Id.,* n. 15.

For the foregoing reasons, the court affirms the bankruptcy court's holding that the funds in Carlton, Fields' trust account became the property of the bankruptcy estate upon the filing of the petition.

### Possession, custody or control of the funds

Carlton, Fields argues that it did not have the requisite "possession, custody or control"

over the funds in question so as to make the firm liable under § 542. This is because the funds were in the firm's trust account and, as such, they belonged only to the client and not to the law firm. Brief of Appellant p. 18. Carlton, Fields states that Judge Grant acknowledged in his Decision that "property held in an attorney's client trust account belongs to the client and the attorney is required to deliver that property to the client upon request. *See* Fla.St.Bar R. 4–1.15; *Wilkerson v. Olcott,* 212 So.2d 119 (Fla.App. 1968)." Dcn. p. 7 n. 4. Thus, says Carlton, Fields, the firm did not truly have possession, custody or control of the funds since it could only hold them or use them for the benefit of a client. Also, says Carlton, Fields, the money was actually in the possession of the bank where the trust account was maintained.

Judge Grant flatly rejected the argument that the firm did not have possession, custody or control. What Carlton, Fields says regarding attorney trust accounts is true insofar as it goes. Boyer does not contest the fact that funds in an attorney trust account belong to the client rather than the attorneys. Carlton, Fields asserts that because the money did not belong to the firm, and because it had no power to do anything with the money until directed to do so by its client, it did not have "possession, custody or control" of the funds. In support of its position, appellant cites the case of *Bonded Financial Services, Inc. v. European American Bank,* 838 F.2d 890 (7th Cir.1988). In *Bonded,* the debtor brought a § 550 action against a bank in an effort to obtain an avoidance of an allegedly fraudulent transfer. The Seventh Circuit held that the bank was not a transferee of the debtor's funds, that it received no benefit from the transfer of funds, and that it acted only as a financial intermediary. "The bank therefore was *no different* from a courier or an intermediary on a wire transfer; it held the check only for the purpose of fulfilling an instruction to make the funds available to someone else." *Id.* at 893. The Court concluded that the bank did not have "dominion" over the debtor's money; that is, it did not have "the right to put the money to [its] own purposes." *Id.* There-

fore, the bank was not a "transferee" under § 550 and was not subject to an action pursuant to that section.

Judge Grant rejected this argument, holding that the *Bonded* "decision has no applicability to the case before the court. . . . By its own terms, § 550 applies only with regard to transfers which are 'avoided under §§ 544, 545, 547, 548, 549, 553(b), or 724(a).' It has no applicability to proceedings under § 542. . . ." Dcn. p. 8 (quoting 11 U.S.C. § 550(a)). Carlton, Fields acknowledges that the express language in § 550 limits its application to those sections of the Bankruptcy Code listed, but still urges the court to apply it to the present case. States Carlton, Fields, "[a]lthough § 550 does not appear, on its face, to apply to this cause of action, this court should apply the statute's principles to the case at bar." Brief of Appellant, p. 23. Carlton, Fields cites *In re Hill*, 156 B.R. 998 (Bankr.N.D.Ill.1993) in support of this argument. In *Hill*, the court held that "the Bankruptcy Code must be considered as a whole and the impact and application of one section cannot be viewed in isolation without proper thought to other relevant and perhaps controlling sections." *Id.* at 1006. Carlton, Fields points out that the court in *Hill* held that the § 550(b) defense was available in a § 542 recovery action. However, the facts in *Hill* are very different from the facts of the present case. In *Hill*, the trustee filed a § 542 action to recover real property that had been sold to third parties. The court first found that the purchasers of the real estate were bona fide purchasers in that they "took *for value*, in good faith and without knowledge of the avoidability of the transfer." Id. at 1008 (italics added). Then, after repeated references to the defendants' lack of any knowledge regarding the debtor's bankruptcy proceeding, the court concluded that "[t]here is no compelling policy reason not to apply the bona fide purchaser defense *on these facts.*" *Id.* at 1008–1009 (italics added).

■ Accepting Carlton, Fields argument that the "principle" of § 550(b) should be applied to the present case, just as it was applied in *Hill*, would require the court to ignore the differences in the facts of the two cases. First, as the court in *Hill* expressly noted, § 550(b) is a "bona fide purchaser" defense to an avoidance action brought under one of the Code sections listed in § 550(a). In the present case, Carlton, Fields did not purchase anything. It is not a case in which Carlton, Fields innocently gave value in exchange for property that a trustee now seeks to recover. Also, as the court in *Hill* noted many times in its decision, the defendants in that case were without *any knowledge*, actual or constructive, of the bankruptcy proceeding and the voidability of the transfer involving the real estate. In the present case, Carlton, Fields did have knowledge of the bankruptcy proceedings. The degree of knowledge Carlton, Fields possessed about the bankruptcy proceeding at the time it transferred the funds to Davis is relevant to a discussion of the appellant's equitable defenses, which are addressed below. However, even if one determines that Carlton, Fields did *not* have actual knowledge of the proceedings or the possible voidability of the transfer of funds out of its trust account, that fact would not be enough to invoke the application of the bona fide purchaser defense to the facts of this case. Having paid no value in exchange for the funds, and having at least some degree of knowledge of Diversified's bankruptcy, Carlton, Fields is not entitled to the defense afforded under § 550(b).

■ Appellant's argument that it did not have "possession, custody or control" of the funds because it did not have "dominion" over the money as discussed in the *Bonded* case fails for other reasons also. While it is true that the phrase "possession, custody or control" is not defined in the Code, reading the phrase in context with the language in § 541 helps clarify its meaning and purpose. The relevant portion of § 541 states that "[t]he commencement of a case . . . creates an estate. Such estate is comprised of all the following property, *wherever located and by whomever held:* (1) . . . *all legal or equitable interests* of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a) and (a)(1) (italics added). That language, especially the portion in italics, indicates the very broad scope of a bankruptcy estate. Congress drafted the sweeping lan-

guage of §§ 541 and 542 deliberately to grant broad powers to an estate and its trustee. As the Supreme Court has stated, "... to facilitate the rehabilitation of the debtor's business, all the debtor's property must be included in the reorganization estate.... Both the congressional goal of encouraging reorganizations and Congress' choice of methods to protect secured creditors suggest that Congress intended a broad range of property to be included in the estate." *Whiting Pools*, 462 U.S. at 204, 103 S.Ct. at 2313 (1983). With this policy in mind, it is noteworthy that Congress wrote the phrase "possession, custody or control" in the disjunctive rather than the conjunctive. Nothing in the phrase indicates that an entity must have any kind of "dominion" over the property in question, as Carlton, Fields asserts. So, while the law firm may not have had "control" over the money since it could only transfer it pursuant to the directives of its client, that did not prevent the firm from having "possession" or "custody," which is enough to make it subject to a turnover action under § 542. To interpret the phrase "possession, custody or control" as restrictively as appellant urges would fly in the face of the broad intent and purpose of §§ 541 and 542.

For the foregoing reasons, the bankruptcy court's conclusion that Carlton, Fields had "possession, custody or control" over property of the estate is affirmed. Also, the bankruptcy court's conclusion that the bona fide purchaser defense of § 550(b) does not apply to the present case is likewise affirmed.

**Duty to "account" for funds of the estate**

Carlton, Fields next argues that even if it did have possession of the funds of the estate at one time, it did not have present possession of them at the time the trustee filed the § 542 action. Therefore, all the law firm had to do was account for the funds. Section 542 states that if the entity in possession, custody, or control cannot turn the property over to the trustee, it must "account for such property, or the value of such property...." Carlton, Fields maintains that this means that a party no longer in possession merely must account for what happened to the funds.

There is some authority for this argument in the case of *In re: Bell & Beckwith*, 44 B.R. 659 (Bankr.N.D.Ohio 1984), wherein the court held that "... a review of [§ 542] finds that it addresses situations where an entity is in present possession of property which the Trustee has claimed to be part of a debtor's estate." However, there is much authority that holds otherwise. Boyer cites the case of *In re Robertson*, 105 B.R. 440 (Bankr.N.D.Ill. 1989), wherein the court held that "[t]he statute plainly applies to estate property that was possessed by anyone during the case, whether or not they still have it." 105 B.R. at 457. Boyer also cites *In re Gailey*, 119 B.R. 504 (Bankr.W.D.Pa.1990), which stated that the trustee "is entitled to receive the value of estate property from any person or entity who has wrongly transferred such property after the filing of a bankruptcy petition, absent a showing by the transferor that the transfer was made in good faith and without notice or actual knowledge of the bankruptcy case." *Id.* at 514.

In rejecting Carlton, Fields' argument that lack of present possession excuses the firm from any liability under § 542, Judge Grant devoted nearly eleven pages of his decision to a thorough discussion of the history of the bankruptcy court's summary and plenary powers, and how the turnover action of § 542 differs dramatically from its equivalent under the old Bankruptcy Act. At the risk of oversimplifying Judge Grant's scholarly discussion of this issue, the essence of it is that lack of present possession is not a complete defense to liability under § 542. Such was Judge Grant's conclusion, and this rule of law is set forth quite clearly in the case of *In re Borchert*, 143 B.R. 917 (Bankr. D.N.D.1992), wherein the court wrote:

There simply cannot be turnover of property that does not exist. *Maggio v. Zeitz*, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948); *In re Robertson*, 105 B.R. 440 (Bankr.N.D.Ill.1989). The section provides for more than turnover of the actual property. It also provides that:

'... an entity ... in possession ... *during the case* of property that the trustee may use, sell or lease under section 363 ... shall deliver to the trustee, *and account*

*for,* such property, *or the value of such property* ....'

The foregoing is applicable to any entity that possessed property belonging to the debtor at any time during case pendency, whether or not it had possession at the time a demand for turnover was made. It means that such entity must account to the trustee for the property itself or be prepared to surrender its value if for some reason the property itself no longer exists. What this means in a Chapter 7 is that if an entity in possession of estate property receives notice of the bankruptcy filing but nonetheless transfers the property to anyone other than the trustee, it does so at its peril. In the absence of the property itself the trustee in such instance is entitled to recover the value of the estate property from the entity making the transfer.... 143 B.R. at 919 (italics in original).

As Judge Grant wrote, it is "clear that the trustee's inability to obtain turnover, due to the lack of present possession, cannot properly be equated with the total absence of liability to the estate on the part of the turnover respondent." Dcn. p. 16. As Judge Grant also points out, "The presence of paragraph (c) in § 542 also undermines Carlton, Fields' argument that present possession is a prerequisite to the trustee's recovery.... Section 542(c) gives an affirmative defense to a turnover defendant who, in good faith and without knowledge of the commencement of the case, transfers property of the estate to an entity other than the trustee.... If the lack of present possession, regardless of cause, was a complete defense to turnover, one must naturally wonder what Congress was attempting to give protection from. Section 542(c) serves no purpose if the lack of present possession requires a judgment for the defendant." Dcn. p. 18.

The case law cited by Judge Grant, and his legal analysis of the issue, clearly support his conclusion that Carlton, Fields' lack of possession of the funds at the time the turnover demand was made did not relieve it of all liability under § 542. For the foregoing reasons, the holding of the bankruptcy court on this issue is affirmed.

## Carlton, Fields' Equitable Defense

Carlton, Fields asserts an equitable defense to liability that is basically two-fold. First, it states that the Trustee, Boyer, failed to expeditiously pursue turnover of the funds once he knew they had been transferred to Carlton, Fields. Judge Grant rejected this defense and quoted from the case of *In re Bidlofsky,* 57 B.R. 883 (Bankr.E.D.Mich. 1985), which held that: "[T]he court must reject the bank's conclusion that the trustee's breach of his obligations relieves it of any liability. Clearly sections 704 and 542 create separate and distinct obligations.... The bank's duty to deliver the funds to the trustee, especially where as here it had knowledge of the bankruptcy, is absolute. The trustee's breach of duty is irrelevant to the bank's duty." *Id.* at 900.

Appellant points out that the court in *Bidlofsky* strongly reprimanded the trustee in that case for his lack of diligence in taking action to recover funds on behalf of the bankruptcy estate. Nevertheless, the court held that the bank could not escape liability, especially where it had actual knowledge of the bankruptcy. It is true that the court in *Bidlofsky* stated that "[t]he Court must agree that a trustee is under an obligation to collect property of the estate expeditiously. 11 U.S.C. § 704(1).... [A] trustee breaches that obligation when for nearly two months after notice of the account, all the trustee does is send a letter requesting a freeze...." *Id.* Carlton, Fields alleges that in the present case the trustees for the bankruptcy estate breached this same obligation in that they failed to investigate the Merrill Lynch account in a timely manner. Had they done so, says Carlton, Fields, they would have discovered that the funds were in the firm's trust account, perhaps before they were transferred.

Carlton, Fields' attempt to pass the blame to the bankruptcy trustees was rejected by Judge Grant based largely on the language in *Bidlofsky.* Carlton, Fields' attempt to distinguish *Bidlofsky* ignores some key facts, both in that case and in the case at bar. In *Bidlofsky,* the court held that the trustee had breached his obligation to collect estate property when he failed to collect the money in "a

bank account that is clearly property of the estate" for two months *"after notice of the account."* 57 B.R. at 900 (italics added). Carlton, Fields claims that lack of diligence on behalf of representatives of Diversified's estate resulted in them not making claim to the funds in the firm's account for more than three months after the estate was created, and that this lack of diligence should be considered by the court when deciding whether or not Carlton, Fields is entitled to an equitable defense.

A review of the testimony from the underlying trial, however, reveals that representatives of Diversified's estate were not as lax as Carlton, Fields would imply. Steven Goldberg was appointed the Chapter 11 trustee in late December of 1992. Tr. p. 9. Soon after that, Davis and Society Bank (which was the main secured creditor of Diversified) turned over to Goldberg various records on various Diversified accounts. *Id.* In late January of 1993, Goldberg received a billing from Carlton, Fields directed to Diversified. Tr. p. 20. Goldberg testified that this was the first time he learned of Carlton, Fields, and that he sent the billing letter on to his attorney with instructions to find out what kind of legal activity was going on in Florida that involved Diversified. *Id.* Based on this billing, the estate sent a letter to Carlton, Fields informing the firm of the bankruptcy estate, asking it to do no more work, inquiring as to the nature of the Florida litigation, and requesting a full report on that litigation. Tr. pp. 20–21. Goldberg testified that he never got a response to that letter. Tr. p. 21. He did receive, however, a letter from Carlton, Fields partner Jones, which was directed to Paul Davis and was dated March 24, 1993, and included a further billing statement for services rendered through February 28, 1993. Tr. p. 21. Goldberg also asked Davis about the withdrawal of $125,000.00 from the Merrill Lynch account, and Davis told him the money was paid to an overseas supplier. Tr. p. 26. Goldberg had previously requested records from Merrill Lynch pertaining to the account in question so that he could further investigate the account transactions. Tr. p. 35. The Chapter 11 action was converted to a Chapter 7 proceeding in late February of 1993, and Boyer was appointed Chapter 7 trustee. Tr. p. 39. On May 17, 1993, Boyer's attorney received a report from Merrill Lynch, dated May 13, 1993. Tr. p. 46. According to Boyer, this was the first time he had any notice that $125,000.00 had been wired from the Merrill Lynch account to Carlton, Fields. Tr. pp. 44–45. That same month, Boyer wrote to Carlton, Fields informing the firm of the estate's claim to the funds. Tr. p. 64.

Carlton, Fields argues that "this court will likely conclude that the chastised *Bidlofsky* trustee was the epitome of diligence when compared to the representatives of Diversified's estate." Brief of Appellant p. 39. However, this court reaches no such conclusion. The trustee in *Bidlofsky* had almost immediate notice that the account in question in that case was in fact property of the estate and yet waited two months before making any attempt whatsoever to recover it. In the case at bar, while both trustees had notice of the existence of the Merrill Lynch account, they did not have any notice that any money disbursed from that account was property of the estate. As stated above, Goldberg testified that Davis and Society Bank turned over account records to him soon after the filing of the petition. He, and later Boyer, made attempts to contact Merrill Lynch and Carlton, Fields to obtain information that would help them identify estate property. When Boyer received a report from Merrill Lynch in May 1993 which indicated that the $125,-000.00 had been wired to the firm, he made a claim for those funds that same month.

While Carlton, Fields could possibly argue that Goldberg and Boyer could have done more to investigate the Merrill Lynch account, or that they could have made more strenuous efforts to contact Carlton, Fields, the court concludes that the lack of diligence on the part of Goldberg or Boyer, if any, does not amount to a breach of their obligations under § 704(1). For that reason, and because of the clear language of the *Bidlofsky* case, stating that a party's obligation to turn over property of an estate to the trustee is absolute, this court affirms Judge Grant's conclusion that any lack of diligence on behalf of Goldberg or Boyer is

irrelevant to Carlton, Fields' equitable defense claim.

■ The other prong of appellant's equitable defense is based on what the firm considers its lack of actual notice that the funds were the property of the debtor. It is well established that "[t]he only exception to a trustee's right to recover the value of estate property wrongfully transferred is if at the time of the transfer the entity had neither actual notice nor actual knowledge of the commencement of the case and the transfer was made in good faith." *In re Borchert,* 143 B.R. at 919. The express language of this equitable defense is found in § 542(c), which states:

> Except as provided in section 362(a)(7) of this title, an entity that has neither actual notice nor actual knowledge of the commencement of the case concerning the debtor may transfer property of the estate, or pay a debt owing to the debtor, in good faith and other than in the manner specified in subsection (d) of this section, to an entity other than the trustee, with the same effect as to the entity making such transfer or payment as if the case under this title concerning the debtor had not been commenced.

■ This section codifies the equitable defense created by the Supreme Court in *Bank of Marin v. England,* 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966), a pre-Code case in which the Court recognized that a party who transfers property of a bankruptcy estate without any knowledge of the bankruptcy case was entitled to an equitable defense to the trustee's action to recover from that innocent party. In the present case, Boyer does not allege that the transfer of funds by Carlton, Fields to Boyer was done in bad faith. Thus, the "good faith" element of the § 542(c) defense is not in issue. Judge Grant concluded, however, that "[b]ecause it had actual knowledge of the bankruptcy case (the phone conversation between Davis and Johnson), Carlton, Fields cannot take advantage of the statutory exception to turnover of § 542(c)." Dcn. p. 20. Carlton, Fields does not dispute that it has actual notice of the bankruptcy itself. Tr. of oral argument p. 19.

Carlton, Fields argues that the bankruptcy court should have used its inherent equitable powers to absolve it of liability under § 542(a) since, notwithstanding its actual knowledge of Diversified's bankruptcy filing, it had no notice that the funds in its trust account were property of the estate. As appellant stated at oral argument, "... theoretically it makes some sense that there ought to be an equitable defense to 542 if you didn't know that you were dealing with estate property." Tr. of oral argument p. 18. As logical as this argument may seem, Carlton, Fields can cite no authority for its position, and makes its argument based solely on principles of equity.

Appellee stated at oral argument that no equitable defense to a turnover action exists outside of the codification of the *Marin* defense contained in § 542(c), to which Carlton, Fields is not entitled since it had notice of the commencement of the bankruptcy case. Tr. of oral argument p. 26. For his part, Judge Grant held that "[t]he court does not need to consider whether or not it should recognize an equitable defense to § 542(a) beyond those already created by Congress. The facts of this case do not warrant such a consideration, because the court does not accept Carlton, Fields' initial premise that nothing put it on notice that the money might belong to the debtor." Dcn. pp. 20–21.

Judge Grant rejected Carlton, Fields' request for a nonstatutory equitable defense to liability. In explaining his conclusion, he began by enumerating eight specific findings of fact. Dcn. p. 22. These findings include the following:

1. Carlton, Fields represented U.S.A. Diversified Products, Inc. and its officers, Paul and Candace Davis, prior to December 10, 1992.

2. U.S.A. Diversified Products, Inc. paid the initial retainer, which Carlton, Fields requested in connection with its representation of that corporation and its principals.

3. U.S.A. Diversified Products, Inc. filed a petition for relief under the Bankruptcy Code on December 10, 1992.

4. The day before U.S.A. Diversified's petition for relief, the sum of $125,000.00 was wire transferred into Carlton, Fields' trust account. The documents associated with this wire transfer did not disclose the ownership of the account from which the money came.

5. By virtue of counsel's letter of February 10, 1993, which Carlton, Fields received on February 22, 1993, it should have known that a trustee had been appointed in U.S.A. Diversified's bankruptcy case.

6. Debtor's address was 1001 W. Brooklyn, P.O. Box 505, Syracuse, Indiana 46567.

7. Carlton, Fields' engagement letter to the debtor and its billing address for the debtor was 1001 W. Brooklyn, Syracuse, Indiana 46567.

8. Carlton, Fields remitted the funds from the trust account to Davis at P.O. Box 745, Syracuse, Indiana 46567, an address which apparently had not been used for any previous communication.

At oral argument on this appeal, counsel for the appellant admitted that the above findings of Judge Grant were not in dispute and were not clearly erroneous. Tr. of oral argument p. 3. In addition to these eight findings by Judge Grant, there are several other facts pertaining to the timing and degree of knowledge Carlton, Fields had regarding Diversified's bankruptcy that are undisputed. These facts are relevant to Carlton, Fields' argument that it is entitled to an equitable defense as a result of its alleged lack of notice that the funds were property of the estate.

It is clear that the $125,000.00 was wired from the Merrill Lynch account to Carlton, Fields, at the direction of Davis, on December 9, 1992. The bankruptcy petition was filed on December 10, 1992. On December 14, 1992, Carlton, Fields received actual notice of Diversified's bankruptcy filing when Davis told Johnson on the telephone that the petition had been filed. Tr. p. 105. Johnson specifically asked Davis about the funds in the firm's trust account and Davis represented that the money was his own, not Diversified's. Tr. pp. 86–87. Johnson then called his boss, Jones, to inform him of the bankruptcy of Diversified and alert him to the fact that the firm might need to take some action, such as filing a suggestion of stay. Tr. p. 101. Jones was out of the office, so Johnson left a detailed message with Jones' secretary regarding the information obtained from Davis. *Id.* However, Jones claimed he never received any message and Johnson apparently did not follow up on the matter. Tr. pp. 159–160. On February 22, 1993, Carlton, Fields received a letter from counsel for the trustee, dated February 10, 1993, reiterating that Diversified was in bankruptcy and requesting a report from the firm on its representation of Diversified. However, Jones did not see the letter until late May because it was placed in Diversified's file without being brought to his attention. Tr. pp. 162–163. Two days later, on February 24, 1993, Carlton, Fields transferred the money in its trust account to Davis, pursuant to Davis' request made on February 10, 1993.

Judge Grant found that "[u]nder these circumstances, where a reasonably prudent person would have inquired further before disbursing more than $110,000.00 and where that inquiry would have resulted in Carlton, Fields learning of the trustee's claim to the money in its possession, Carlton, Fields cannot successfully contend that it had no notice that the money belonged to the estate." Carlton, Fields argues that these same facts reveal that it did not have notice that the funds were property of the debtor. In fact, the firm argues, Davis specifically (and untruthfully) told Johnson that the money was his own and not Diversified's.

Carlton, Fields contends that what Judge Grant's decision amounts to is a finding that the firm had "implied actual notice" that the funds belonged to the debtor. Carlton, Fields argues that imposing "liability in this case, based on implied actual notice, is new law. And it doesn't exist anywhere else." Tr. of oral argument p. 7.

Nowhere in his decision does Judge Grant ever employ the phrase "implied actual notice." Carlton, Fields argues, however, that Judge Grant's conclusion that the firm could not "permissibly claim a lack of notice or knowledge that the funds in its trust account belonged to the debtor" based on the infor-

mation the firm had at the time it transferred the money, amounts to exactly that. Even the appellee admitted that no one ever expressly stated to Carlton, Fields that the funds in question belonged to Diversified. Tr. of oral argument p. 8. However, appellee argues that what Carlton, Fields had rose "to the level of actual notice." *Id.*

Carlton, Fields argues that if Judge Grant's decision is read as charging the firm with "implied actual notice," that such is inadequate to defeat an equitable defense to a turnover suit. The firm argues that all the cases in which a turnover defendant's equitable defense was defeated involved situations in which the entity had "actual" notice rather than some arguably lesser standard known as "implied actual notice." *See In re Robertson*, 105 B.R. at 457 (an entity is not liable under § 542 if had neither 'actual notice nor actual knowledge of the commencement of the case concerning the debtor....) (quoting 4 Collier on Bankruptcy § 542.04 (15th ed. 1989)); *In re Hoffman*, 51 B.R. 42, 46 (Bankr.W.D.Ark.1985) ("[s]ection 542 now protects the [entity] that transfers property of the estate to third persons where the transfer is made without notice of the bankruptcy filing and made in good faith.").

Therefore, what Carlton, Fields is asking this court to find is: 1) there exists an equitable defense to a turnover action outside of that codified in § 542(c); 2) this equitable defense can be defeated only where the transferring entity had actual notice that the property it held was property of the estate; and 3) the "notice" that Carlton, Fields had in this case did not amount to actual notice.

Carlton, Fields presents no authority to support its contention that there exists an equitable defense to a turnover action outside to that found in § 542(c). Judge Grant held that he did not need to address this issue, since he found that the law firm had actual notice or knowledge that the funds belonged to the debtor. This court has not located any case that holds that a non-statutory equitable defense to a § 542 turnover action exists. Even if this court were to recognize such a defense in this case, it must also accept Carlton, Fields' argument that Judge Grant's

decision to impose liability in this case based on "implied actual notice" was improper.

In support of his conclusion that the notice Carlton, Fields had amounted to actual notice, Judge Grant quoted the following passage from *Matter of Citizens Loan and Savings Co.*, 5 B.R. 510, 514 (Bankr.W.D.Mo. 1979) *aff'd*, 64 B.R. 537 (W.D.Mo.1981):

> Nor is it necessary, as the defendants appear to argue, that the defendants have definite and specific knowledge that the monies transferred are those of the estate, as opposed to the corporate officer.... Rather, it is sufficient that the defendants, as the evidence shows, had knowledge of the petition in the bankruptcy case and of [the corporate officer's] position with the bankrupt. For the filing of a bankruptcy petition is not only "an attachment and an injunction," but also a "caveat to all the world," under which a person does business at his peril with the bankrupt or its officer.

After quoting the above language and setting forth his eight specific findings of fact, Judge Grant concluded that "[u]nder these circumstances, Carlton, Fields cannot permissibly claim a lack of notice or knowledge that the funds in its trust account belonged to the debtor." Dcn. p. 22.

As stated previously, Judge Grant never used the phrase "implied actual notice" in his decision. However, even if Carlton, Fields' is correct in its argument that implied actual notice is precisely what Judge Grant found that the firm had, it does not necessarily mean that the concept of implied actual notice is inadequate to impose liability under § 542. There is authority, both in Florida law and in the Seventh Circuit, for the proposition that actual notice may be express or implied. Judge Grant cited three Florida cases that specifically discuss this point. Dcn. p. 23. One of those cases is *Symons v. State*, 490 So.2d 1322 (Fla.App.1986), which states:

> Implied actual notice is inferred from the fact that a person had the means of knowledge and the duty to use them but did not. It is based on the premise that a person has no right to shut his eyes or ears to avoid information and then say he had no

notice; it will not suffice the law to remain willfully ignorant of a thing readily ascertainable when the means of knowledge is at hand. *Sapp v. Warner,* 141 So. 124, 127 (1932). In order to charge a person with notice of information which might have been learned by inquiry, the circumstances must be such as should reasonably suggest inquiry. A determination of whether there are sufficient facts known to require further investigation generally is one of fact. *Rafkind v. Beer,* 426 So.2d 1097, 1099 (Fla. App.1983).

Even more recently, a Florida court held that "[o]ne who has the means of obtaining knowledge under circumstances reasonably suggesting the need for inquiry, and who does not use the knowledge and means to obtain such information has 'implied actual knowledge' of the information." *Freeze v. Dept. of Business Regulation,* 556 So.2d 1204, 1206 (Fla.App.1990).

The Seventh Circuit has also recognized the concept of implied actual notice, even though it notes that the term is "a disagreeable oxymoron." *Shacket v. Philko Aviation, Inc.,* 841 F.2d 166, 170 (7th Cir.1988). The court explained that "... 'actual notice' ... includes ... knowledge of facts that would lead a reasonable person to inquire further...." More specifically, the court held that " 'implied actual notice' requires (1) actual knowledge of (2) highly suspicious circumstances, coupled with (3) an unaccountable failure to react to them.... Knowledge of fishy circumstances that would move a reasonable person to inquire further is enough." *Id.* at 171. *See also, Contract Courier v. Research and Special Programs Administration,* 924 F.2d 112, 114 (7th Cir. 1991) ("[s]ometimes the law requires inquiry and treats a person as possessing whatever knowledge inquiry would have produced.").

Determining whether or not a person had implied actual notice or knowledge of a fact or situation requires a thorough assessment of the facts of the particular case. In the present case, Judge Grant made several findings of fact, none of which this court finds to be clearly erroneous. The testimony at trial revealed the degree of notice or knowledge that Carlton, Fields had regarding Diversi-fied's bankruptcy and Davis' connection with that company. Judge Grant also had an opportunity to assess the credibility of the witnesses. Judge Grant then determined that Carlton, Field had actual notice (or, if one insists, implied actual notice) that the funds in its trust account were property of Diversified at the time the firm transferred them to Davis. The bankruptcy estate cannot be made to suffer as a result of the failure of a Carlton, Fields associate to follow up on a matter that he considered potentially very important when he first heard of it, or the firm's failure to direct the February 1993 letter sent by the bankruptcy estate to one of the firm's partners.

## CONCLUSION

For the foregoing reasons, the September 14, 1995 decision of the United States Bankruptcy Court for the Northern District of Indiana, Fort Wayne Division, is hereby AFFIRMED.

## MEMORANDUM OF DECISION AND ORDER

This is an appeal from a decision of the Bankruptcy Court, filed by the law firm of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A. ("Carlton, Fields" or "Appellant"). The debtor is U.S.A. Diversified Products, Inc. ("Diversified" or "Debtor") and the Trustee is R. David Boyer ("Boyer" or "Trustee"). Notice of appeal from the decision of the U.S. Bankruptcy Court, Judge Grant, was filed on September 22, 1995 and the case was docketed in this court on October 17, 1995. Carlton, Fields filed a brief on November 16, 1995, Boyer filed a brief on December 4, 1995, and Carlton, Fields filed a reply brief on January 4, 1996. Oral argument was conducted before this court on February 26, 1996. For the following reasons, the decision of the Bankruptcy Court, entered on September 14, 1995, is hereby AFFIRMED.